UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ODYSSEY REINSURANCE COMPANY, a Connecticut corporation,

Plaintiff,

v.

RICHARD KEITH NAGBY, DIANE NAGBY a.k.a. DIANE DOSTALIK; PACIFIC BROKERS INSURANCE SERVICES, a Nevada Corporation; CAL-REGENT INSURANCE SERVICES CORPORATION, a California corporation,

Defendants.

Case No.: 16-cv-03038-BTM-WVG

**ORDER DENYING KNIGHT INSURANCE'S MOTION TO INTERVENE**

**[ECF Nos. 203, 214]**

Pending before the Court is Knight Insurance's Motion to intervene in the above-captioned case. (See ECF No. 203 ("Mot. to Interv.").) As part of its motion, Knight Insurance ("Knight") has filed a complaint-in-intervention, seeking declaratory and injunctive relief against Plaintiff Odyssey Reinsurance ("Plaintiff" or "Odyssey"). (See ECF No. 203-5 ("Compl.-in-Interv.").) Knight has also submitted an objection to Plaintiff Odyssey's Motion for Order Directing Payment of Registry Funds ("Turnover Motion") (ECF No. 140). (See ECF No. 214 ("Obj.

to Turnover Mot.”).) For the reasons discussed below, Knight’s Motion to Intervene is **DENIED** and its objection to the Turnover Motion is **OVERRULED.**

## FACTUAL BACKGROUND

This action arises out of the judgment entered by the United States District Court for the District of Connecticut in favor of Odyssey and against Cal-Regent in the amount of $3,200,000.00 (“Odyssey Judgment”). (See ECF No. (“Second Am. Compl. or SAC”) ¶¶ 15–17.) Cal-Regent was an insurance agency that underwrote certain insurance risks on behalf of State National Insurance Company (“State National”). (SAC ¶ 18.) Plaintiff in turn reinsured State National for a certain percentage of those risks, ranging from 90%–100%. (Id.) In accordance with a series of reinsurance agreements between the parties, Cal-Regent received a provisional commission—paid in part by Plaintiff—on all policies that it underwrote for State National. (SAC ¶ 19.) At the end of each year, the provisional commissions were adjusted depending on the profitability of the business underwritten by Cal-Regent. (SAC ¶ 20.) Where the provisional commission paid by Plaintiff exceeded the amount to which Cal-Regent was entitled to after the yearly adjustment, Cal-Regent was obligated to pay the difference to Plaintiff. (Id.) By 2013, Cal-Regent owed Plaintiff $2,740,802.61 in return commissions, in part due to a lawsuit against State National that settled in February 2013. (SAC ¶¶ 21–23, 25.)

Plaintiff alleges that by early 2013, Defendants Richard Nagby and Diane Nagby “understood that the amount of return commissions owing to [Plaintiff] would substantially increase” as a result of the lawsuit. (SAC ¶ 29.) Plaintiff claims that “[a]s the potential effect of the [lawsuit] on Cal-Regent’s obligation to pay return commission became clear to the Nagbys, they embarked on a plan to strip Cal-Regent of assets.” (SAC ¶ 30.)

Plaintiff alleges that Mr. Nagby, with the help of Defendants Claim Technology Services Corporation (“CTS”) and its Chief Executive Officer (“CEO”)

David Dostalik, “caused funds otherwise owing to Cal-Regent and/or to its successor PBIS to be transferred to one or more account(s) held in the name of CTS” to conceal funds from creditors including Plaintiff. (SAC ¶¶ 32, 40.7.) Defendant Dostalik allegedly released to the Nagbys or for their benefit, “portions of the funds held by CTS on behalf of Cal-Regent.” (SAC ¶ 33.) Some of the funds were also deposited into the Cal-Regent and PBIS operating accounts to pay creditors, “in order to deceive them as to the true status of Cal-Regent and CTS.” (Id.) “Other funds deposited into the Cal-Regent or PBIS operating accounts were characterized by the Nagbys as loans to those entities, so that payments back to the Nagbys could be characterized as tax-free loan repayments.” (Id.)

Plaintiff also claims that in April 2013, while Cal-Regent’s debts remained outstanding, the Nagbys formed PBIS and subsequently “caused Cal-Regent to transfer substantially all of its assets to PBIS,” including its goodwill and “book of business,” without receiving reasonably equivalent value in exchange for these assets. (SAC ¶¶ 35–36, 45.) The Nagbys are both Cal-Regent’s and PBIS’s officers, directors, managers and shareholders. (SAC ¶ 46.) Plaintiff alleges that “PBIS was formed by the Nagbys for the specific purpose of continuing the business operations of Cal-Regent under a different name in order to hinder, delay or defraud the creditors of Cal-Regent.” (SAC ¶ 49.)

In April 2014, Plaintiff filed an action in the District of Connecticut against Cal-Regent to recover the amount owed to Plaintiff in return commissions. (SAC ¶ 12.) In October 2015, the court rendered a judgment in Plaintiff’s favor and against Cal-Regent in amount of $2,740,802.61. (SAC ¶ 14.) In November 2015, the court awarded Plaintiff a supplement judgment. (SAC ¶¶ 15–17.) In addition to the October 2015 judgment the court also awarded Plaintiff $459,197.39, bringing the judgment to a total sum of $3,200,000.00 plus interest. (Id.) Plaintiff alleges that “three months after oral argument on [Plaintiff’s] motion

for summary judgment in the Connecticut action and three months before the Judgment was entered, the Nagbys caused PBIS to sell substantially all of its assets to AmTrust for $5 million." (SAC ¶ 37.)

Of the sale proceeds ("the AmTrust Proceeds"), AmTrust made an initial payment of $3 million, which was distributed to the Nagbys. (SAC ¶ 37.) Ms. Nagby received $2.5 million, and Mr. Nagby received $500,000. (See ECF No. 195, 3:17-26.) The remainder was to be paid in the form of contingent "earn out" payments in three annual installments. (Id.) In October 2016, AmTrust wired the first earn out payment in the amount of $894.583.19 to a PBIS bank account. (Id.) Those funds were immediately withdrawn by Richard Nagby. (Id.)

## PROCEDURAL BACKGROUND

Plaintiff filed the SAC on March 21, 2017, against several defendants including PBIS, Cal-Regent, and the Nagbys under several theories of liability including the Uniform Fraudulent Transfer Act ("UFTA") and California's alter ego and successor liability law. (SAC.)

On October 4, 2017, the Court granted Plaintiff's motion for the entry of a default judgment against Cal-Regent and PBIS in the amount of $3.2 million plus post-judgment interest. (See ECF No. 68.) That same day, the Court also granted Plaintiff a preliminary injunction against the Nagbys, restraining them from the dissipation of the AmTrust Proceeds, including "all funds already received in connection with the sale of PBIS to AmTrust, and payments that are hereafter received from AmTrust." (ECF No. 69 ("the October 2017 Injunction Order").).)

On October 10, 2017, a stipulated order was entered directing AmTrust to pay into the Court registry the second and third earn out payments. (See ECF No. 74 ("the October 2017 Registry Order").) Plaintiff and AmTrust filed a joint motion to dismiss AmTrust without prejudice. (See ECF No. 84.) The dismissal order required that AmTrust continue to abide by the October 2017 Registry

Order. (Id.) AmTrust has now deposited the second and third earn out payments, totaling $958,017.66, into the Court registry. (See ECF No. 223 ("Pl.'s Opp'n), 4:15-22.)

On October 27, 2017, the Court entered a judgment as to Cal-Regent and PBIS, including a monetary award against PBIS in the amount of $3,219,482.68, the amount owing on the District of Connecticut judgment against Cal-Regent. (ECF No. 82.) On March 5, 2018, the Court certified the judgment as final under Fed. R. Civ. P. 54(b). (ECF No. 105.) No appeal was taken.

The Court has also issued a series of injunctions and temporary restraining orders requiring Ms. Nagby to deposit AmTrust Proceeds in her possession into the Court registry, per the October 2017 Injunction Order. Before the Court is an OSC proceeding as to why Ms. Nagby should not be held in contempt with respect to those orders, set to conclude on April 5, 2019.

Finally, pretrial dates have been set, culminating in the final pretrial conference scheduled for May 30, 2019. Trial is scheduled to begin in July 2019.

## BACKGROUND ON MOTION TO INTERVENE

Knight Insurance now brings a motion to intervene. Knight bases its motion on very similar facts to those that Odyssey has presented throughout its suit against the Defendants. Knight's claims arise from a contractual relationship it had with Cal-Regent and State National Insurance Company that is nearly identical to the relationship among Odyssey, Cal-Regent, and State National Insurance Company. (Mot. to Interv., 3:3-4:14.) In this relationship, Cal-Regent underwrote certain insurance risks on behalf of State National, and Knight reinsured State National for those risks, subject to the terms of a reinsurance agreement, under which Knight would receive payment based on certain commission adjustments. (Id. at 3:22-4:14.) Knight's reinsurance agreement was in effect from July 1, 2009 to July 31, 2014. (Id.) Knight alleges that Cal-Regent owes Knight over $3 million which was never paid. (Id.)

Since 2014, Knight does not allege that it took any steps to recover on its contract losses from Cal-Regent. Knight alleges that it first learned of the current lawsuit on November 21, 2018 and now claims an interest in the funds deposited into the Court registry. (See id. at 12:24-26.)

Along with Knight's motion to intervene filed on December 20, 2018, Knight also submitted to the Court a complaint-in-intervention. (See Compl.-in-Interv.) Even though the allegations are largely similar to those that Odyssey has asserted against the Defendants in this case based on violations of the UFTA and California's alter ego and successor liability law, Knight formally seeks relief against Odyssey only. (See id. at 6:22-8:9.) First, Knight seeks declaratory relief, requesting that the Court determine the respective rights of Knight and Odyssey as to the funds in the Court registry. (Id.) Second, Knight requests injunctive relief, seeking to enjoin Odyssey from secreting, transferring, disposing of, or comingling any funds or property representing the proceeds of any assets previously belonging to Cal-Regent, PBIS, and/or and the Nagbys. (Id.)

Plaintiff Odyssey and Defendant Diane Nagby oppose Knight's motion to intervene. (See ECF No. 223 ("Pl.'s Opp'n"); ECF No. 224 ("Def. Diane Nagby's Opp'n").)

## JURISDICTION

The Court first considers whether it has subject matter jurisdiction over Knight's complaint-in-intervention. Knight argues that the Court has diversity jurisdiction because Knight seeks relief against Odyssey only and there is complete diversity as between Knight and Odyssey. Knight is a Cayman Islands corporation with its principal place of business located in California, whereas Odyssey is a Connecticut corporation, with its principal place of business located in Connecticut.

//

//

Odyssey and Ms. Nagby argue, however, that even though the complaint-in-intervention may only formally seek relief against Odyssey, the basis for that relief is predicated on claims against the other California Defendants in this case, including Cal-Regent, PBIS, and the Nagbys. In other words, Knight only asserts an interest in the funds in the Court registry, because it alleges that it can obtain a judgment against the California Defendants. Odyssey and Ms. Nagby assert that because Knight's interests are adverse to the California Defendants, the intervention of Knight would destroy diversity.

Odyssey and Ms. Nagby are correct that diversity jurisdiction does not simply depend on the relief that Knight seeks in the complain-in-intervention. "The issue of alignment for purposes of diversity jurisdiction requires a court to 'look beyond the pleadings' to the actual interests of the parties respecting the subject matter of the lawsuit." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 872 (9th Cir. 2000). Because the relief that Knight seeks is based on claims against the California Defendants, Knight's interests are adverse to those of the California Defendants.

The next question then is whether Knight's intervention would destroy diversity jurisdiction because Knight, as a California citizen, is nondiverse as to the California Defendants. The Supreme Court has established that "diversity of citizenship is assessed at the time the action is filed . . . if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). The *Freeport-McMoRan* Court stressed that diversity jurisdiction is not "defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties." *Id.* (quoting *Wichita R.R. & Light Co. v. Public Utils. Comm'n of Kansas*, 260 U.S. 48, 54 (1922)). Thus, whether diversity jurisdiction is defeated by the addition of a nondiverse party to the action depends on whether the nondiverse

party is “indispensable.” *Id.*; *see also Mattel, Inc. v. Bryant*, 446 F.3d 1011, 1013-14 (9th Cir. 2006) (“Intervention destroys diversity if the intervening party is indispensable.”) (internal quotation omitted).

Federal Rule of Civil Procedure 19(b) instructs that the question of whether a party is indispensable requires that a determination be made “in equity and good conscience.” Fed. R. Civ. P. 19(b). The Supreme Court has held that a party is not indispensable if “it had no interest whatsoever in the outcome of the litigation until sometime after suit was commenced.” *Freeport-McMoRan, Inc.*, 498 U.S. at 428.

Here, Knight is not an indispensable party to the action, because it had no interest in the outcome until long after it was filed. This lawsuit is Odyssey’s attempt to enforce its rights as a creditor of Cal-Regent, an undertaking that began with Odyssey obtaining a successful judgment in an action filed in the District of Connecticut in April 2014. The current action has been ongoing since December 2016. The Court’s order directing AmTrust to pay the second and third earn out payments into the Court registry was not entered until October 10, 2017. Knight’s only asserted interest in this case is the fund held by the Court. Therefore, Knight had no alleged interest in the outcome of this litigation until October 10, 2017 at the earliest, nearly ten months after the suit in this district was filed and over three years since the District of Connecticut action. In equity and good conscience, the Court holds that Knight is not indispensable. Thus, the Court maintains diversity jurisdiction even if Knight were to intervene as a nondiverse party.

Odyssey and Ms. Nagby have argued that 28 U.S.C. § 1367, the supplemental jurisdiction statute, establishes that the Court lacks subject matter jurisdiction. The Court disagrees. § 1367 states that supplemental jurisdiction does not extend to “persons . . . seeking to intervene as plaintiffs under Rule 24” if, as in this case, the only basis of the federal court’s original jurisdiction is

diversity *and* if "exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332 [the diversity statute]." 28 U.S.C. § 1367(b). Even after § 1367 was adopted in 1990, the Supreme Court, along with circuit courts, continued to recognize the well-established rule that the exercise of jurisdiction over the addition of a nondiverse party is not inconsistent with the requirements of diversity jurisdiction as long as the party is not indispensable. *See Freeport-McMoRan, Inc.*, 498 U.S. at 428 (holding that diversity jurisdiction survived the addition of a nondiverse plaintiff when complete diversity existed at the time the federal action arose); *see also Mattel, Inc. v. Bryant*, 446 F.3d at 1014 (holding that "[n]either § 1332 nor § 1367 upset the long-established judge-made rule that the presence of a nondiverse and not indispensable defendant intervenor does not destroy complete diversity"); *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006) (holding that the court maintained jurisdiction over a diversity action even after the intervention of a nondiverse plaintiff because "[s]ection 1367(b) reflects Congress' intent to prevent *original* plaintiffs from circumventing the requirements of diversity") (internal omissions, quotations, and citation omitted); *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 580 (5th Cir. 2004) (holding that "'plaintiff' in § 1367(b) refers to the original plaintiff in the action—not to a defendant that happens also to be a counter-plaintiff, cross-plaintiff, or third-party-plaintiff"). Thus, the Court does not deny Knight's motion to intervene on the grounds that it lacks subject matter jurisdiction. The Court considers the merits of the motion below.

//

//

//

//

//

## DISCUSSION

Knight Insurance brings this motion to intervene under Federal Rule of Civil Procedure 24. Knight argues it is entitled to intervene as a matter of right, under Rule 24(a). In the alternative, Knight requests that the Court grant it permissive intervention, under Rule 24(b).

### A. Fed. R. Civ. P. 24(a) – Intervention as of Right

Federal Rule of Civil Procedure 24(a) governs intervention as of right. The rule requires a movant to demonstrate that four requirements are met:

> (1) [T]he intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "The requirements are broadly interpreted in favor of intervention." *Id.* Moreover, when deciding a motion to intervene as of right, a court should be "guided primarily by practical considerations, not technical distinctions." *Id.*

Odyssey and Ms. Nagby do not dispute that Knight has met the third and fourth requirements. However, both argue that Knight fails to meet the first two requirements, and on that basis, the motion to intervene should be denied. The Court agrees.

#### 1. Knight Has No Significant Protectable Interest.

First and foremost, Knight has no significant protectable interest in the current action. "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and [n]o specific legal or equitable interest need be established." *Id.* (internal quotations omitted) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)). Moreover, "[t]o demonstrate a significant protectable interest, an applicant must

establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.*

Knight argues that it has a significantly protectable interest in the funds held by the Court registry. Knight alleges that like Odyssey, Knight is a creditor of Cal-Regent and thus may seek relief from PBIS, AmTrust, and the Nagbys under the UFTA and California's alter ego and successor liability law. Consequently, Knight alleges an interest in the funds deposited into the Court registry by AmTrust. The problem, however, is that unlike Odyssey, Knight has no judgment against Cal-Regent, PBIS, or any of the other Defendants. Odyssey has a judgment obtained on the merits against Cal-Regent from the District of Connecticut and a default judgment against both Cal-Regent and PBIS from this Court. Odyssey's interest in the funds in the Court registry is *directly related* to these two judgments. Knight, on the other hand, has obtained no judgment against any defendant, and thus, there is no basis for Knight to assert an interest in the funds in the Court registry. Knight claims to be a creditor, but no court has so held. Moreover, even if the Court were to determine that Knight's interest were sufficiently based in a potential judgment against one or more of the Defendants, the Court has no way of ascertaining how much that hypothetical judgment would be. Thus, the Court cannot determine how much of an interest Knight would have in the fund, even if it could be shown that there is any protectable interest at all.

**2. The Intervention Application is Untimely.**

Second, Knight's intervention application is not timely. "Timeliness is determined by the totality of the circumstances facing would-be intervenors," taking into account "three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (internal quotation and citation omitted). The

Ninth Circuit has held that “prejudice to existing parties is the most important consideration in deciding whether a motion for intervention is untimely.” *Id.* at 857 (internal quotations and citations omitted). However, the Ninth Circuit has also emphasized that:

> the only ‘prejudice’ that is relevant under this factor is that which flows from a prospective intervenor’s failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more difficult.

*Id.* (internal quotations and citations omitted). Thus, the “crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties.” *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Indeed, “an absentee who has failed to move promptly to protect [its] interest may be denied the opportunity to intervene and participate in the action.” 7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1902 (3d ed. 2018).

Knight argues that its motion is timely. Knight alleges that it first learned of the present lawsuit on November 21, 2018 when it was first in the process of investigating Cal-Regent, and since this discovery, Knight promptly moved to intervene. Knight’s motion was filed on December 20, 2018. Knight also argues that the stage of the proceedings is not so advanced that intervention would cause prejudice to the parties. Knight points to the fact that not all of the potential available proceeds have been deposited into the Court registry. Moreover, the Court has not issued any final turnover orders.

Odyssey and Ms. Nagby opposes Knight’s assertion of timeliness, arguing that the proceedings are at an advanced stage: The complaint was filed over two years ago, discovery has long been completed, final judgment has already been entered against both Cal-Regent, the party against whom Knight asserts a

breach of contract claim, and PBIS, Cal-Regent's successor-in-interest. Moreover, pretrial dates have already been set, with the final date scheduled for May 30, 2019. Finally, trial is set to begin in July 2019. As a result, Odyssey and Ms. Nagby argue that the parties will be greatly prejudiced by Knight's intervention at this late stage.

Odyssey and Ms. Nagby assert that Knight's delay is inexcusable, because Knight should have been aware of its rights long before its application to intervene. For example, Odyssey highlights that simple investigative steps, including a simple Google search of "Cal-Regent" would have made Knight aware of the Odyssey lawsuits. Moreover, in following up on Knight's alleged breach of contract claim against Cal-Regent, Knight would have discovered, as Odyssey did, that Cal-Regent had transferred its business to PBIS. Considering that Knight's contract with Cal-Regent was up in July 2014 and that Knight is claiming over $3 million in damages, Odyssey argues that Knight's claimed ignorance was willful and reckless at worst and negligent at best.

The Court holds that Knight's motion to intervene is untimely. Even when accepting as true the allegation that Knight did not discover this lawsuit until November 21, 2018, Knight should have been aware of its rights. Long before the motion to intervene, Knight should have known that any interests it may have in seeking a debt from Cal-Regent would not be adequately protected in the absence of taking certain actions in furtherance of those potential interests. First, Knight's alleged contract claims arise from a relationship with Cal-Regent that ended over four and a half years ago, in July of 2014. Since then, Knight reports no attempt whatsoever to recover losses from Cal-Regent's alleged breach of contract. Second, even if the Court accepts as true Knight's allegation that the final calculation and payment by Cal-Regent to Knight was not due until August 31, 2017, (see Mot. Interv., 5:14-21), Knight still failed to take any steps to enforce its rights for over a year before the motion to intervene. During those

fourteen months, the other parties were moving the litigation forward and expending attorney's fees. Finally, as a creditor of Cal-Regent, Knight should have known to investigate whether other creditors were making claims against Cal-Regent. Timeliness is analyzed by asking when the intervenor should have known its interest was at risk. By failing to move promptly to protect its interests, Knight has let years of litigation go by.

In light of Knight's unreasonable delay in moving to intervene, the parties will be prejudiced by its intervention. Therefore, the Court holds that Knight's motion is untimely.

Because Knight has no significant protectable interest in the funds in the Court registry and because intervention at this late stage is not timely and would cause prejudice to the other parties, Knight's motion to intervene as of right under Rule 24(a) is denied.

**B. Fed. R. Civ. P. 24(b) – Permissive Intervention**

Federal Rule of Civil Procedure 24(b) governs permissive intervention. In the Ninth Circuit, Rule 24(b) allows permissive intervention where the applicant for intervention shows: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). "In exercising its discretion" on this issue, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As discussed above, Knight's motion to intervene is untimely, and granting permissive intervention will cause prejudice to the existing parties. Therefore, Knight's motion for permissive intervention under Rule 24(b) is also denied.

//

//

//

//

## CONCLUSION

For the reasons discussed above, Knight Insurance's Motion to Intervene (ECF No. 203) is **DENIED**. Knight's objection to the Turnover Motion (ECF No. 214) is **OVERRULED.**

**IT IS SO ORDERED**.

Dated: March 7, 2019

Honorable Barry Ted Moskowitz
United States District Judge