# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODYSSEY REINSURANCE COMPANY, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD KEITH NAGBY; DIANE NAGBY a.k.a. DIANE DOSTALIK; PACIFIC BROKERS INSURANCE SERVICES, a Nevada Corporation; CAL-REGENT INSURANCE SERVICES CORPORATION, a California corporation; CLAIMS TECHNOLOGY SERVICES CORPORATION, a California corporation; DAVID DOSTALIK,<br><br>Defendants. | Case No.: 16-cv-03038-BTM-WVG<br><br>**ORDER**<br>**(1) DISBURSING FUNDS**<br>**(2) GRANTING MOTION FOR ORDER DIRECTING PAYMENT OF REGISTRY FUNDS TO PLAINTIFF ODYSSEY**<br>**(3) DENYING AS MOOT REQUEST FOR MODIFIED ORDER RE OCTOBER 2017 REGISTRY ORDER**<br>**(4) GRANTING REQUEST FOR JUDICIAL NOTICE**<br>**(5) CERTIFYING THIS ORDER AS FINAL UNDER FED. R. CIV. P. 54(b)**<br><br>**[ECF No. 140, 140-4]** |

Pending before the Court is Plaintiff Odyssey Reinsurance Company's Motion for Order Directing Payment of Registry Funds to Odyssey and Request for a Modified Order re the October 2017 Registry Order (ECF No. 74). (ECF No. 140 ("Turnover Mot.").) Plaintiff has also submitted a request for judicial

notice. (ECF No. 140-4 ("RJN").) For the reasons discussed below, the Court **grants** the turnover motion, **denies as moot** the request for a modified order re the October 2017 Registry Order, and **grants** Plaintiff's request for judicial notice.

//
//
//

## **FACTUAL BACKGROUND**

This action arises out of the judgment entered by the United States District Court for the District of Connecticut in favor of Odyssey and against Cal-Regent in the amount of $3,200,000.00 ("Odyssey Judgment"). (See ECF No. ("Second Am. Compl. or SAC") ¶¶ 15–17.) Cal-Regent was an insurance agency that underwrote certain insurance risks on behalf of State National Insurance Company ("State National"). (SAC ¶ 18.) Plaintiff in turn reinsured State National for a certain percentage of those risks, ranging from 90%–100%. (Id.) In accordance with a series of reinsurance agreements between the parties, Cal-Regent received a provisional commission—paid in part by Plaintiff—on all policies that it underwrote for State National. (SAC ¶ 19.) At the end of each year, the provisional commissions were adjusted depending on the profitability of the business underwritten by Cal-Regent. (SAC ¶ 20.) Where the provisional commission paid by Plaintiff exceeded the amount to which Cal-Regent was entitled to after the yearly adjustment, Cal-Regent was obligated to pay the difference to Plaintiff. (Id.) By 2013, Cal-Regent owed Plaintiff $2,740,802.61 in return commissions, in part due to a lawsuit against State National that settled in February 2013. (SAC ¶¶ 21–23, 25.)

Plaintiff alleges that by early 2013, Defendants Richard Nagby and Diane Nagby "understood that the amount of return commissions owing to [Plaintiff] would substantially increase" as a result of the lawsuit. (SAC ¶ 29.) Plaintiff claims that "[a]s the potential effect of the [lawsuit] on Cal-Regent's obligation to

pay return commission became clear to the Nagbys, they embarked on a plan to strip Cal-Regent of assets," (SAC ¶ 30), which began with the Nagbys forming Pacific Brokers Insurance Services ("PBIS"), a Nevada corporation, (SAC ¶35).

Plaintiff alleges that Mr. Nagby, with the help of Defendants Claim Technology Services Corporation ("CTS") and its Chief Executive Officer ("CEO") David Dostalik, "caused funds otherwise owing to Cal-Regent and/or to its successor PBIS to be transferred to one or more account(s) held in the name of CTS" to conceal funds from creditors including Plaintiff. (SAC ¶¶ 32, 40.7.) Defendant Dostalik allegedly released to the Nagbys or for their benefit, "portions of the funds held by CTS on behalf of Cal-Regent." (SAC ¶ 33.) Some of the funds were also deposited into the Cal-Regent and PBIS operating accounts to pay creditors, "in order to deceive them as to the true status of Cal-Regent and CTS." (Id.) "Other funds deposited into the Cal-Regent or PBIS operating accounts were characterized by the Nagbys as loans to those entities, so that payments back to the Nagbys could be characterized as tax-free loan repayments." (Id.)

Plaintiff also claims that in April 2013, while Cal-Regent's debts remained outstanding, the Nagbys formed PBIS and subsequently "caused Cal-Regent to transfer substantially all of its assets to PBIS," including its goodwill and "book of business," without receiving reasonably equivalent value in exchange for these assets. (SAC ¶¶ 35–36, 45.) The Nagbys are both Cal-Regent's and PBIS's officers, directors, managers and shareholders. (SAC ¶ 46.) Plaintiff alleges that "PBIS was formed by the Nagbys for the specific purpose of continuing the business operations of Cal-Regent under a different name in order to hinder, delay or defraud the creditors of Cal-Regent." (SAC ¶ 49.)

In April 2014, Plaintiff filed an action in the District of Connecticut against Cal-Regent to recover the amount owed to Plaintiff in return commissions. (SAC ¶ 12.) In October 2015, the court rendered a judgment in Plaintiff's favor and

against Cal-Regent in amount of $2,740,802.61. (SAC ¶ 14.) In November 2015, the court awarded Plaintiff a supplement judgment. (SAC ¶¶ 15–17.) In addition to the October 2015 judgment the court also awarded Plaintiff $459,197.39, bringing the judgment to a total sum of $3,200,000.00 plus interest. (Id.)

Plaintiff alleges that "three months after oral argument on [Plaintiff's] motion for summary judgment in the Connecticut action and three months before the Judgment was entered, the Nagbys caused PBIS to sell substantially all of its assets to AmTrust for $5 million." (SAC ¶ 37.)

Of the sale proceeds ("the AmTrust Proceeds"), AmTrust made an initial payment of $3 million, which was distributed to the Nagbys. (SAC ¶ 37.) Ms. Nagby received $2.5 million, and Mr. Nagby received $500,000. (See ECF No. 195, 3:17-26.) The remainder was to be paid in the form of contingent "earn out" payments in three annual installments. (Id.) In October 2016, AmTrust wired the first earn out payment in the amount of $894.583.19 to a PBIS bank account. (Id.) Those funds were immediately withdrawn by Richard Nagby. (Id.)

## PROCEDURAL BACKGROUND

Plaintiff filed the SAC on March 21, 2017, against several defendants including PBIS, Cal-Regent, and the Nagbys under several theories of liability including the Uniform Fraudulent Transfer Act ("UFTA") and California's alter ego and successor liability law. (SAC.)

On October 4, 2017, the Court granted Plaintiff's motion for the entry of a default judgment against Cal-Regent and PBIS in the amount of $3.2 million plus post-judgment interest. (See ECF No. 68.) The Court also granted Plaintiff a preliminary injunction against the Nagbys, restraining them from the dissipation of the AmTrust Proceeds, including "all funds already received in connection with the sale of PBIS to AmTrust, and payments that are hereafter received from AmTrust." (ECF No. 69 ("October 2017 Injunction Order".).)

On October 10, 2017, a stipulated order was entered directing AmTrust to pay into the Court registry the second and third earn out payments. (See ECF No. 74 ("October 2017 Registry Order").) Plaintiff and AmTrust filed a joint motion to dismiss AmTrust without prejudice. (See ECF No. 84.) The dismissal order required that AmTrust continue to abide by the October 2017 Registry Order. (Id.) AmTrust has now deposited the second and third earn out payments, totaling $958,017.66, into the Court registry. (See ECF No. 223 ("Pl.'s Opp'n to Mot.-to-Interv."), 4:15-22.)

On October 27, 2017, the Court entered a judgment as to Cal-Regent and PBIS, including a monetary award against PBIS in the amount of $3,219,482.68, the amount owing on the District of Connecticut judgment against Cal-Regent. (ECF No. 82.) On March 5, 2018, the Court certified the judgment as final under Fed. R. Civ. P. 54(b). (ECF No. 105.) No appeal was taken.

The Court has also issued a series of injunctions and temporary restraining orders requiring Ms. Nagby to deposit AmTrust Proceeds in her possession into the Court registry, per the October 2017 Injunction Order. Before the Court is an OSC proceeding as to why Ms. Nagby should not be held in contempt with respect to those orders, set to conclude on April 5, 2019.

Finally, pretrial dates have been set, culminating in the final pretrial conference scheduled for May 30, 2019. Trial is scheduled to begin in July 2019.

## **DISCUSSION**

The October 2017 Registry Order states that "[t]he funds so deposited shall be held in an interest bearing account pending further order of this Court." (See October 2017 Registry Order, 2:19-20.) Plaintiff Odyssey now brings a turnover motion, requesting that the Court issue an order directing payment of the funds in the Court registry to Odyssey. The Court holds that the funds in the Court registry belong to PBIS. Moreover, Plaintiff, as a judgment creditor of PBIS, may execute on its judgment against PBIS by collecting the funds in the Court

registry. Thus, the Court grants Odyssey's motion and directs that the funds in the Court registry be turned over to Odyssey.

### A. The Funds in the Court Registry Are PBIS Assets

The funds currently in the Court registry were deposited by AmTrust and make up the last two earn out payments that AmTrust owed to PBIS for the sale of PBIS. Odyssey argues that the funds belong to PBIS. Defendant Richard Nagby argues that the ownership of the funds has not yet been established. The Court agrees with Odyssey.

First, the contract governing the sale of PBIS to AmTrust establishes that for the purposes of the transaction, PBIS was the seller and AmTrust was the buyer. The contract is entitled "Renewal Rights and Asset Purchase Agreement by and between AmTrust North America, Inc. and Pacific Brokers Insurance Services Corporation" ("Purchase Agreement"). (See Turnover Mot., Ex. 508 p1.) Moreover, the Purchase Agreement states in its first provision that the contract was "made and entered into" and "by and between" "Pacific Brokers Insurance Services Corporation, a Nevada corporation ('Seller'), and AmTrust North America, Inc., a Delaware corporation ('Buyer')." (Id. at 4.)

Second, the Purchase Agreement establishes that the total purchase price was made up of the cash purchase price "*together with*" the earn out payments. (Id. at 7-8 (emphasis added).) The provision of the Purchase Agreement entitled "Purchase Price" dictates that the Buyer, AmTrust, would pay to the Seller, PBIS, a cash purchase price on the closing date in the amount of $3 million. (Id. at 7.) The provision goes on to instruct that a series of earn out payments, not to exceed $2 million, would serve "as additional consideration *for the purchase of the Business*." (Id. at 8 (emphasis added).)

Third, the Purchase Agreement is signed by individuals in their capacity as representatives of AmTrust and PBIS. The contract is signed by Stephen Ungar, as AmTrust's secretary, and Mr. Nagby and Ms. Nagby, as PBIS's president and

only other shareholder, respectively. (Id. at 31.) There is no indication anywhere in the contract that the Nagbys themselves were distinct parties to the Purchase Agreement.

The Purchase Agreement makes clear that a sale took place for the assets of a corporation, PBIS, rather than for personal property. Thus, the consideration received for the sale became the property of PBIS.

Mr. Nagby argues that there is a real dispute as to the ownership of the earn out payments that AmTrust deposited into the Court registry. Mr. Nagby argues that due to the contentious nature of the divorce proceedings between himself and Ms. Nagby, Mr. Nagby "ma[de] a motion to the family law court to obtain distribution of the down payment and also to clarify ownership of all the upcoming 'earn out payments' so as not to have to continually be challenged by the contentious ex-wife Diane Nagby whenever an earn out payment was due." (ECF No. 160 ("Def. Richard Nagby's Opp'n"), 5:15-18.) Mr. Nagby goes on to state that "the family law court ruled on August 3, 2015, that the down payment be distributed to the parties and that all future earn out payments belong to the opposing party Richard Nagby and were to be paid as directed by him." (Id. at 5:21-24.) Mr. Nagby argues that "[t]his created a legal right to the earn out payments in Richard Nagby." (Id.)

The family law court ruling did not create a legal right to the earn out payments in Richard Nagby. The most the family law court ruling did was clarify ownership as between the Nagbys. The Nagbys are shareholders of PBIS and thus may receive corporate distributions under certain conditions. Thus, the family law court ruling may have determined who would receive what in the event of a distribution. However, the family law court ruling has no effect on the ownership of the AmTrust Proceeds as determined by the Purchase Agreement. The Purchase Agreement clearly states that the earn out payments are "additional consideration *for the purchase of the Business* [PBIS]." (Turnover Mot., Ex. 508 p8 (emphasis added).) When AmTrust deposited the last two earn out payments

into the Court registry, it was in furtherance of its contractual obligation to compensate PBIS for the sale of its assets. Thus, there is no dispute that the last two earn out payments currently in the Court registry belong to PBIS.

### B. Odyssey Has a Right to the Funds in the Court Registry as a Judgement Creditor of PBIS

On October 27, 2017, the Court entered a judgment as to Cal-Regent and PBIS, including a monetary award against PBIS in the amount of $3,219,482.68, the amount owing on the District of Connecticut judgment against Cal-Regent. (ECF No. 82.) On March 5, 2018, the Court certified the judgment as final under Fed. R. Civ. P. 54(b) after considering Odyssey's unopposed Rule 54(b) motion. (ECF No. 105.) Defendants did not appeal.

Odyssey seeks the enforcement of its money judgment against PBIS. Under Federal Rule of Civil Procedure 69(a), the procedure of the state where the federal court is located applies to the enforcement of money judgments. Fed. R. Civ. P. 69(a)(1). Thus, here the Court applies California state law. Under the California Code of Civil Procedure, "[e]xcept as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment." Cal. Civ. Proc. Code § 695.010(a). Because the funds in the Court registry are PBIS assets, Odyssey has a right to the funds as a judgment creditor of PBIS.

In addition, "[s]ince the assets of [even] a dissolved corporation can only be distributed to [] shareholders subject to the rights of creditors of [a] corporation, the assets of [a] corporation remain[] subject to an equitable charge for all debts owed by the corporation. *Trubowitch v. Riverbank Canning Co.*, 30 Cal. 2d 335, 345 (1947); *Zinn v. Bright,* 9 Cal. App. 3d 188, 192 (1970). The rights of Odyssey, as a judgment creditor of PBIS, are superior to those of Mr. and Ms. Nagby, as shareholders of PBIS. Therefore, Odyssey is entitled to execute on its judgment against PBIS on the funds in the Court registry.

//

## C. Odyssey May Collect the Funds in the Court Registry to Execute On Its Judgment Against PBIS

Under California state law, a court "may order the judgment debtor to assign to the judgment creditor . . . all or part of a right to payment due . . . ." Cal. Civ. Proc. Code § 708.510(a). Moreover, several provisions of the California Code of Civil Procedure when taken together "indicate that the assignment may be ordered directly by the court." *See* Alan M. Ahart, Cal. Prac. Guide Enf. J. & Debt Ch. 6G-5 (2018) (citing Cal. Civ. Proc. Code §§ 708.510(c)-(f), 708.530, 708.540, 708.560(b)). In other words, a court may "assign a right to payment outright (not simply an order directing the judgment debtor to do so)." *Id.* (citing *In re Advanced Biomedical, Inc.*, 547 B.R. 337, 340-42, 346 (Bankr. C.D. Cal. 2016). Thus, under the California Code of Civil Procedure, the Court directs payment of the PBIS assets in the Court registry directly to Odyssey.

## D. Mr. Nagby Has Not Moved to Set Aside the Default Judgment

Mr. Nagby, "[i]n the event [that] the Court finds Plaintiff's motion meritorious," requests "leave of the Court to attempt to reinstate PBIS as a corporation in good standing in California and move to set aside the default and enter an appearance." (Def. Richard Nagby's Opp'n, 11:20-27). Mr. Nagby does not need the Court's permission to seek relief from the default and has filed no motion to set aside the judgment against PBIS (ECF No. 82) under Fed. R. Civ. P. 60(b). Thus, the Court does not find Mr. Nagby's request as imposing an impediment to the turnover.

//
//
//
//
//
//

### E. Plaintiff's Request for Modifications to the October 2017 Registry Order is Denied as Moot

Plaintiff's turnover motion was filed before AmTrust deposited the last earn out payment into the Court registry. As a result, there is no need for the Court to grant an assignment order or permission to levy on the third earn out payment. Therefore, Plaintiff's request for modifications to the October 2017 Registry Order is denied as moot.

### F. Request for Judicial Notice

Plaintiff requests that the Court take judicial notice of pleadings filed in *In re: Marriage of: Diane M. Nagby v. Richard K. Nagby*, Case No. ED80574, in the Superior Court of California, County of San Diego. (See RJN.) The Court takes judicial notice of the pleadings and grants Plaintiff's request for judicial notice.

## CONCLUSION

For the reasons discussed above, the Court **grants** the turnover motion. (ECF No. 140.) The Court directs payment of $958,017.66 plus interest from the Court registry to Plaintiff Odyssey Reinsurance Company, to be applied to Plaintiff's judgment against PBIS (ECF No. 82).

The Court **denies as moot** Odyssey's request for modifications to the October 2017 Registry Order (ECF No. 74). (ECF No. 140.)

The Court **grants** Plaintiff's request for judicial notice. (ECF No. 140-4.)

Finding no just reason for delay, this Order is hereby certified as final pursuant to Fed. R. Civ. P. 54(b).

As provided herein, the Clerk is ordered to release $958,017.66 plus accrued interest from the interest bearing account in the above-entitled case to Odyssey Reinsurance Company, 300 Stamford Place, Stamford, Connecticut 06902. The Clerk is authorized to deduct fees in handling all funds deposited in the Court and held in interest bearing accounts as mandated and approved by the Judicial Conference of the United States. See CivLR 67.1(c). The

disbursement will be stayed for thirty days from the entry of this order to allow for the filing of an appeal. See CivLR 67.1(d)(1). Title to the $958,017.66 plus any accrued interest vests in Odyssey Reinsurance Company upon entry of this order.

**IT IS SO ORDERED**.

Dated: March 14, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge