UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODYSSEY REINSURANCE COMPANY, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD KEITH NAGBY; DIANE NAGBY a.k.a. DIANE DOSTALIK; PACIFIC BROKERS INSURANCE SERVICES, a Nevada Corporation; CAL-REGENT INSURANCE SERVICES CORPORATION, a California corporation; CLAIMS TECHNOLOGY SERVICES CORPORATION, a California corporation; DAVID DOSTALIK,<br><br>Defendants. | Case No.: 16-cv-03038-BTM-WVG<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS DOSTALIK AND CLAIMS TECHNOLOGY SERVICES CORPORATION AS TO PLAINTIFF'S FIFTH, SIXTH, SEVENTH, AND THIRTEENTH CAUSES OF ACTION**<br><br>**[ECF No. 166]** |

Defendants David Dostalik ("Dostalik") and Claims Technology Services Corporation ("CTS") move for summary judgment on Plaintiff's fifth, sixth, seventh, and thirteenth causes of action. (ECF No. 166 ("Defs.' MSJ").) For the reasons discussed below, the Court **denies** the motion as to the fifth, sixth, and seventh causes of action and **grants** the motion as to the thirteenth cause of action.

## FACTUAL BACKGROUND

This action arises out of the judgment entered by the United States District Court for the District of Connecticut in favor of Plaintiff Odyssey Reinsurance Company ("Plaintiff" or "Odyssey") and against Defendant Cal-Regent in the amount of $3,200,000.00 ("Odyssey Judgment"). (See ECF No. ("Second Am. Compl. or SAC") ¶¶ 15–17.) Cal-Regent was an insurance agency that underwrote certain insurance risks on behalf of State National Insurance Company ("State National"). (SAC ¶ 18.) Plaintiff in turn reinsured State National for a certain percentage of those risks, ranging from 90%–100%. (Id.) In accordance with a series of reinsurance agreements between the parties, Cal-Regent received a provisional commission—paid in part by Plaintiff—on all policies that it underwrote for State National. (SAC ¶ 19.) At the end of each year, the provisional commissions were adjusted depending on the profitability of the business underwritten by Cal-Regent. (SAC ¶ 20.) Where the provisional commission paid by Plaintiff exceeded the amount to which Cal-Regent was entitled to after the yearly adjustment, Cal-Regent was obligated to pay the difference to Plaintiff. (Id.) By 2013, Cal-Regent owed Plaintiff $2,740,802.61 in return commissions, in part due to a lawsuit against State National that settled in February 2013. (SAC ¶¶ 21–23, 25.)

Plaintiff alleges that by early 2013, Defendants Richard Nagby and Diane Nagby "understood that the amount of return commissions owing to [Plaintiff] would substantially increase" as a result of the lawsuit. (SAC ¶ 29.) Plaintiff claims that "[a]s the potential effect of the [lawsuit] on Cal-Regent's obligation to pay return commission became clear to the Nagbys, they embarked on a plan to strip Cal-Regent of assets," (SAC ¶ 30), which began with the Nagbys forming Pacific Brokers Insurance Services ("PBIS"), a Nevada corporation, (SAC ¶35).

Plaintiff alleges that Mr. Nagby, with the help of Defendants CTS and Dostalik, "caused funds otherwise owing to Cal-Regent and/or to its successor

PBIS to be transferred to one or more account(s) held in the name of CTS" to conceal funds from creditors including Plaintiff. (SAC ¶¶ 32, 40.7.) Defendant Dostalik allegedly released to the Nagbys for their benefit, "portions of the funds held by CTS on behalf of Cal-Regent." (SAC ¶ 33.) Some of the funds were also deposited into the Cal-Regent and PBIS operating accounts to pay creditors, "in order to deceive them as to the true status of Cal-Regent and CTS." (Id.) "Other funds deposited into the Cal-Regent or PBIS operating accounts were characterized by the Nagbys as loans to those entities, so that payments back to the Nagbys could be characterized as tax-free loan repayments." (Id.)

Plaintiff also claims that in April 2013, while Cal-Regent's debts remained outstanding, the Nagbys formed PBIS and subsequently "caused Cal-Regent to transfer substantially all of its assets to PBIS," including its goodwill and "book of business," without receiving reasonably equivalent value in exchange for these assets. (SAC ¶¶ 35–36, 45.) The Nagbys are both Cal-Regent's and PBIS's officers, directors, managers and shareholders. (SAC ¶ 46.) Plaintiff alleges that "PBIS was formed by the Nagbys for the specific purpose of continuing the business operations of Cal-Regent under a different name in order to hinder, delay or defraud the creditors of Cal-Regent." (SAC ¶ 49.)

In April 2014, Plaintiff filed an action in the District of Connecticut against Cal-Regent to recover the amount owed to Plaintiff in return commissions. (SAC ¶ 12.) In October 2015, the court rendered a judgment in Plaintiff's favor and against Cal-Regent in amount of $2,740,802.61. (SAC ¶ 14.) In November 2015, the court awarded Plaintiff a supplement judgment. (SAC ¶¶ 15–17.) In addition to the October 2015 judgment the court also awarded Plaintiff $459,197.39, bringing the judgment to a total sum of $3,200,000.00 plus interest. (Id.)

Plaintiff alleges that "three months after oral argument on [Plaintiff's] motion for summary judgment in the Connecticut action and three months before the

Judgment was entered, the Nagbys caused PBIS to sell substantially all of its assets to AmTrust for $5 million." (SAC ¶ 37.)

Of the sale proceeds ("the AmTrust Proceeds"), AmTrust made an initial payment of $3 million, which was distributed to the Nagbys. (SAC ¶ 37.) Ms. Nagby received $2.5 million, and Mr. Nagby received $500,000. (See ECF No. 195, 3:17-26.) The remainder was to be paid in the form of contingent "earn out" payments in three annual installments. (Id.) In October 2016, AmTrust wired the first earn out payment in the amount of $894.583.19 to a PBIS bank account. (Id.) Those funds were immediately withdrawn by Richard Nagby. (Id.)

## PROCEDURAL BACKGROUND

Plaintiff filed the SAC on March 21, 2017, against several defendants including PBIS, Cal-Regent, and the Nagbys under several theories of liability including the Uniform Fraudulent Transfer Act ("UFTA") and California's alter ego and successor liability law. (SAC.)

On October 4, 2017, the Court granted Plaintiff's motion for the entry of a default judgment against Cal-Regent and PBIS in the amount of $3.2 million plus post-judgment interest. (See ECF No. 68.) The Court also granted Plaintiff a preliminary injunction against the Nagbys, restraining them from the dissipation of the AmTrust Proceeds, including "all funds already received in connection with the sale of PBIS to AmTrust, and payments that are hereafter received from AmTrust." (ECF No. 69 ("October 2017 Injunction Order".).)

On October 10, 2017, a stipulated order was entered directing AmTrust to pay into the Court registry the second and third earn out payments. (See ECF No. 74 ("October 2017 Registry Order").) Plaintiff and AmTrust filed a joint motion to dismiss AmTrust without prejudice. (See ECF No. 84.) The dismissal order required that AmTrust continue to abide by the October 2017 Registry Order. (Id.) AmTrust has now deposited the second and third earn out payments, totaling $958,017.66, into the Court registry. (See ECF No. 223 ("Pl.'s

Opp'n to Mot.-to-Interv."), 4:15-22.)

On October 27, 2017, the Court entered a judgment as to Cal-Regent and PBIS, including a monetary award against PBIS in the amount of $3,219,482.68, the amount owing on the District of Connecticut judgment against Cal-Regent. (ECF No. 82.) On March 5, 2018, the Court certified the judgment as final under Fed. R. Civ. P. 54(b). (ECF No. 105.) No appeal was taken.

On March 7, 2019, the Court denied a motion to intervene by third party Knight Insurance. (ECF No. 233.) On March 14, 2019, the Court granted a turnover motion in favor of Odyssey and directed payment of the AmTrust Proceeds in the Court registry (the second and third earn out payments) to Odyssey. (ECF No. 234.) Knight Insurance has appealed both orders. (ECF Nos. 235, 236.)

The Court has also issued a series of injunctions and temporary restraining orders requiring Ms. Nagby to deposit AmTrust Proceeds in her possession into the Court registry, per the October 2017 Injunction Order. Before the Court is an OSC proceeding as to why Ms. Nagby should not be held in contempt with respect to those orders, set to conclude on May 17, 2019.

Pretrial dates have been set, culminating in the final pretrial conference scheduled for June 27, 2019. Trial is scheduled to begin in August 2019.

## **STANDARD**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

*Anderson*, 477 U.S. at 323 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

//
//
//

## DISCUSSION

Under California state law, "[a] fraudulent conveyance is 'a transfer by the debtor of the property to a third person undertaken with the intent to prevent a creditor from reaching the interest to satisfy its claim.'" *Lachapelle v. Kim*, No. 15-CV-02195-JSC, 2015 WL 7753235, at *4 (N.D. Cal. Dec. 2, 2015) (quoting *Yaesu Elecs. Corp. v. Tamara*, 28 Cal. App. 4th 8, 13 (1994)). Under California's Uniform Fraudulent Transfer Act ("UFTA"),[1] a Plaintiff may seek relief from a fraudulent transfer based on a theory of actual fraud under Cal. Civ. Code § 3439.04(a)(1) or constructive fraud under either § 3439.04(a)(2) or § 3439.05. *See Freitag v. Wang*, No. 2:15-CV-2147-JFW-MRW, 2015 WL 7737301, at *3-4 (C.D. Cal. Dec. 1, 2015) (citing Cal. Civ. Code § 3439.04(a)); *Donell v. Kowell*, 533 F.3d 762, 770-771 (9th Cir. 2007); *Lachapelle*, 2015 WL 7753235, at *7.

To establish a fraudulent transfer based on a theory of actual fraud, the Plaintiff must show that the debtor made the transfer or incurred the obligation with "the actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code. § 3439.04(a)(1). Because direct evidence of intent is uncommon, courts may consider the following factors to determine an actual intent to defraud a creditor:

> (1) Whether the transfer or obligation was to an insider; (2) whether the debtor retained possession or control of the property transferred after the transfer; (3) whether the transfer or obligation was disclosed or concealed; (4) whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) whether the transfer was of substantially all the debtor's assets; (6) whether the debtor absconded; (7) whether the debtor removed or concealed assets; (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset

---

[1] Cal. Civ. Code § 3439.14(a) provides that the amendments updating California's fraudulent conveyance statute to conform to the changes in the Uniform Fraudulent Transfer Act "apply only to a right of action that accrued . . . on or after [January 1, 2016]." Plaintiff alleges that the facts giving rise to this lawsuit all occurred prior to January 1, 2016. Thus, the Court cites to the statutory language in effect during the period from 2013 to 2015.

transferred or the amount of the obligation incurred; (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

Cal. Civ. Code § 3439.04(b).

Under § 3439.04(a)(2) or § 3439.05, under a theory of constructive fraud, a transfer is voidable as to an existing creditor if the debtor does not receive reasonably equivalent value and was insolvent at the time of the transfer or became insolvent as a result. *Lachapelle v. Kim*, 2015 WL 7753235, at *7.

Plaintiff asserts its seventh cause of action in tort against the Nagbys and Dostalik as joint tortfeasors in the alleged intentional fraudulent transfer of Cal-Regent and PBIS assets. (SAC ¶ 81-84.) Plaintiff asserts the fifth and sixth causes of action against CTS under the UFTA to avoid the alleged unlawful transfer of Cal-Regent assets to CTS. (Id. at ¶¶ 72-80.) Dostalik moves for summary judgment on cause of action seven and CTS moves for summary judgment on causes of action five and six. As discussed below, because Plaintiff provides sufficient evidence establishing a genuine issue of material fact as to all three causes of action, summary judgment is not appropriate, and the Court denies Defendants' motion.

Plaintiff also asserts the thirteenth cause of action against the Nagbys and CTS to recover the proceeds of avoidable transfers from subsequent transferees under the UFTA. Plaintiff explains that the SAC in part seeks relief against CTS "based on the allegation that CTS was a 'subsequent transferee' of funds derived from the AmTrust sale." (ECF No. 177 ("Pl.'s Opp'n"), 17 n.19.) However, Plaintiff then concedes that "[d]iscovery has revealed no transfers of AmTrust proceeds back to CTS." (Id.) Thus, Plaintiff presents no triable issue of fact against CTS as to the thirteenth cause of action. Due to a discovery delay in which Dostalik, CTS, and Mr. Nagby turned over more than 300,000 items four

8
16-cv-03038-BTM-WVG

months after the original discovery cutoff date and eight days before the deadline for filing dispositive motions, Plaintiff has requested that the Court allow it to remedy any defect in opposing Defendants' motion for summary judgment, as provided for under Federal Rule of Civil Procedure 56(d). (See id. at 24-25.) However, since filing its opposition on September 14, 2018, Plaintiff has neither requested the opportunity for supplemental briefing nor raised during oral argument on February 28, 2019 any triable issues of fact as to CTS's liability as alleged by the thirteenth cause of action. Thus, there is no prejudice in denying this request. Accordingly, the Court grants Defendant CTS's motion as to cause of action thirteen.

### A. Seventh Cause of Action Against Dostalik for Tortious Intentional Fraudulent Transfer

In Plaintiff's seventh cause of action against Dostalik, Plaintiff alleges that Dostalik "conspired with [the Nagbys] to commit the wrongful acts alleged in this Complaint [i.e., the fraudulent transfer of Cal-Regent and PBIS assets], and each of them committed those acts in furtherance of the conspiracy" and "[i]n committing the wrongful acts" he is "guilty of fraud and malice within the meaning of California Civil Code section 3294." (SAC ¶ 82, 84.)

Under California law, "a suit under the UFTA is not the exclusive remedy by which fraudulent transfers may be attacked. Principles of law and equity, including estoppel, fraud, misrepresentation 'or other validating or invalidating cause,' are available to supplement an action under UFTA." *Jhaveri v. Teitelbaum*, 176 Cal. App. 4th 740, 755 (2009) (internal citations omitted). "[A] claim under the UFTA in fact involves tortious conduct. In fraudulently transferring property, tortious conduct occur[s]." *Filip v. Bucurenciu,* 129 Cal. App. 4th 825, 837 (2005). Moreover, California courts have recognized that in granting "[a]ny other relief the circumstances may require," as authorized by Cal. Civ. Code § 3439.07(a)(3)(C), *see Filip*, 129 Cal. App. 4th at 837, parties may be

held jointly and severally liable under a conspiracy theory, s*ee Monastra v. Konica Bus. Machs., U.S.A., Inc.*, 43 Cal. App. 4th 1628, 1645 (1996).

Defendant argues that it is undisputed that he did not engage in any type of conspiracy to assist in the intentional fraudulent transfer of Cal-Regent or PBIS assets. First, Defendant argues there was no fraudulent transfer. Second, Defendant argues that he was only an independent contractor for Cal-Regent and PBIS, performing claims accounting (accounting with respect to the money coming in from insurance policies) and nothing further. Defendant asserts that he was not a decision-maker, nor was he involved in the business operations of either company. Defendant asserts that his role in both companies never went beyond managing the money that came in from policies and went out to pay commissions and other expenses. However, Plaintiff demonstrates there is a genuine issue of material fact as to both whether there were fraudulent transfers of Cal-Regent and PBIS assets as well as the extent of Dostalik's involvement with Cal-Regent and PBIS, particularly during the time period that PBIS was formed and Cal-Regent became insolvent.

### 1. Fraudulent Transfer

As to the question of whether there was a fraudulent transfer of Cal-Regent assets, Plaintiff provides evidence to support that all of the requirements under the UFTA are met under both §3439.04(a)(1) and § 3439.05. First, the Nagbys were the sole owners of both Cal-Regent and PBIS. (ECF No. 165 (Pl.'s MSJ), Ex. 441; Ex. 508.)

In addition, though no physical assets may have been transferred, Plaintiff provides evidence that Cal-Regent transferred its "book of business" and goodwill to PBIS, which supports a claim of fraudulent transfer. *See Hyosung (America), Inc. v. Hantle USA, Inc.*, No. 10-02160 SBA, 2011 WL 835781, at * 5 (N.D. Cal. March 4, 2011) (finding that the plaintiff had sufficiently alleged a fraudulent transfer claim where the property allegedly transferred was the

debtor's business of selling and marketing ATM machines); *see also Stoumbus v. Kilimnik*, 988 F.2d 949, 963–64 (9th Cir. 1993) (interpreting an analogous provision of the Washington Bankruptcy Code and holding that the transfer of a company's goodwill or "going concern value" could support a fraudulent transfer claim). Defendant argues that insurance companies like Cal-Regent and PBIS have no "book of business" to transfer. Defendant explains that Cal-Regent and PBIS did not directly serve policyholders but rather underwrote policies for the insurance brokers. Notwithstanding this distinction, Cal-Regent and PBIS certainly had a "business" and thus assets, to transfer. Plaintiff provides evidence that there was substantial overlap in the insurance agents, brokers, and producers which had policies underwritten by both Cal-Regent and PBIS. (Pl.'s MSJ, Decl. Brian J. Bergmark, Attach. Report, p. 11-14.)

Plaintiff provides additional evidence of a transfer of business in the form of an instant message exchange between Mr. Nagby and Dostalik. On July 12, 2013, the two discussed strategies about how best to structure the transition of Cal-Regent dissolving and PBIS starting so as not to cause their insurance brokers "confusion" and "uncertainty." (Pl.'s Opp'n, Ex. 816, p. 2.) Dostalik remarked:

> It's going to be unsettling enough to switch carriers. Would be easier to change carriers first and then a little later change GA's,[2] less confusion and uncertainty for the brokers and easier on us. They They wouldn't be as leery as a sudden change in GA and carrier at the same time.

(Id. (quoted as appears).) In the same conversation, Dostalik commented on how best to communicate the transition to their brokers, stating, "OK, we will probably need to talk to each broker individually before switching them so they

---

[2] By "GAs," Dostalik was referring to "general agencies," i.e., Cal-Regent and PBIS. Defendant's counsel has referred to companies like Cal-Regent and PBIS like this, notably during oral argument on February 28, 2019.

know what is going on." (Id. (quoted as appears).) Thus, Plaintiff establishes evidence that there was a "business" in the form of relationships and contracts with the insurance brokers and that Dostalik and Mr. Nagby strategized on how best to transfer the business from Cal-Regent to PBIS.

Plaintiff also demonstrates that Cal-Regent's business was in fact transferred to PBIS and that Mr. Nagby took steps to shield Cal-Regent from successor liability in the process. Plaintiff presents evidence in the form of a memorandum prepared by Ryan Baker, a staff member working for the financial manager appointed in the Nagbys' divorce case, who met with Mr. Nagby and discussed the dissolution of Cal-Regent and the creation of PBIS. (See Pl.'s Opp'n, 4-5; Dep. Richard K. Nagby, 135:12-140:3.)[3] Plaintiff alleges that the office of the financial manager produced a copy of the memorandum, referring to a meeting which took place on February 13, 2015, involving Mr. Baker, Mr. Nagby, and Mr. Nagby's nephew, Robert Nagby. (Dep. Richard K. Nagby, 136:12-21.) Plaintiff's counsel presented this copy to Mr. Nagby during his deposition on May 9, 2018 and asked him to read it carefully. (Id. at 135:12-135:19.) Plaintiff's counsel then read from the first paragraph, stating "[t]he information does not represent the opinion of the financial manager; instead it's a summary of what was presented to him during the meeting." (Dep. Richard K. Nagby, 138:5-9.) Directing Mr. Nagby's attention to the last two sentences of paragraph two, Plaintiff's counsel referred to the following contents in the memorandum: "[D]ue to the similarities between Cal-Regent and PBIS, there was

---

[3] The Court notes that while Plaintiff provides a citation to the memorandum in its opposition, (see Pl.'s Opp'n, 4 n.6), the Court was unable to locate the memorandum itself, neither in the exhibits or deposition excerpts lodged with the opposition, nor anywhere else in the docket, including Plaintiff's motion for summary judgment (ECF No. 165). Moreover, even though the memorandum was marked as Exhibit 109 during Mr. Nagby's deposition, (see Dep. Richard K. Nagby, 135:12-14), the exhibit was not included in the copy of Mr. Nagby's deposition received by the Court. In fact, the Court's copy of volume I of Mr. Nagby's deposition has no attached exhibits. The Court also was unable to locate any excerpts from the deposition of Mr. Ryan Baker. Thus, the Court relies on the discussion of the memorandum during Mr. Nagby's deposition.

a concern that PBIS would have successor liability from Cal-Regent" and "in order to create a buffer between the companies and shield from successor liability, Meta Data was created." (Id. at 138:10-24.) In addition, Plaintiff's counsel quoted the last sentence of the memorandum, stating that "[t]he goal of this setup was to insulate PBIS from successor liability of Cal-Regent." (Id. at 139:7-13.) While Mr. Nagby disputed having made these statements to Mr. Baker, neither Mr. Nagby nor his attorney objected during the deposition to the way Plaintiff's counsel characterized the contents of the memorandum. (Id. 135:12-140:3.) Thus, Plaintiff establishes a triable issue of fact as to whether a transfer of assets occurred.

Moreover, Mr. Nagby has conceded that there was no reasonably equivalent value exchanged for any Cal-Regent assets. As defense counsel explained during oral argument on February 28, 2019, Mr. Nagby simply stopped doing business as Cal-Regent and formed PBIS. Mr. Nagby also conceded that when Cal-Regent dissolved, it was insolvent or soon to be insolvent. During oral argument, defense counsel stated that during the time that Mr. Nagby was transitioning from Cal-Regent to PBIS, he was not concerned with Odyssey pursuing Cal-Regent's assets since soon Cal-Regent would no longer have any assets.

This evidence sufficiently raises a genuine issue of material fact as to whether there was a fraudulent transfer under both theories of actual and constructive fraud.

### 2. Dostalik's Participation

Plaintiff also establishes that there is a triable issue of fact as to whether Dostalik acted in furtherance of a fraudulent transfer. In addition to the text conversation that the Court references above, Plaintiff provides several more examples of exchanges between Dostalik and Mr. Nagby, in which Dostalik expressed a personal stake in the creation of PBIS as well as the sale of PBIS to

AmTrust. (Pl.'s Opp'n, Exs. 817, 815, 816, 812, 820, 814.) Dostalik referred to "we," "us," and "our" throughout these conversations. (Id.) Moreover, he described the actions being taken to establish PBIS and the subsequent sale to AmTrust as a joint venture. (Id.) For example, in one conversation on July 31, 2013, Dostalik wrote to Mr. Nagby, "If Odyssey and SNIC really wanted to come after us, do you think PBIS would actually protect us. Could they figure out what we were doing and go after the new company?" (Id. at Ex. 815 (quoted as appears).) Moreover, after Plaintiff initiated its suit against Cal-Regent in the District of Connecticut but before Plaintiff sued PBIS, Dostalik, or CTS, Dostalik wrote to Mr. Nagby on June 23, 2014, "I just hope that our lawyer in CT is doing everything possible to slow the whole process down and making it as costly as possible for the other side . . . He should be challenging and delaying everything he can." (Id. at Ex. 812 (quoted as appears).)

Thus, because Plaintiff raises a genuine issue of material fact as to whether Dostalik assisted in the fraudulent transfer of Cal-Regent and PBIS assets, summary judgment is not appropriate, and the Court denies Dostalik's motion as to Plaintiff's seventh cause of action.

**B. Fifth and Sixth Causes of Action Against CTS for Avoidable Transfers Under the UFTA**

In Plaintiff's fifth and sixth causes of action against CTS, Plaintiff asserts claims under the UFTA under theories of actual and constructive fraud based on the allegation that CTS received Cal-Regent assets, which is voidable as a fraudulent transfer. (SAC ¶¶ 72-80.)

As discussed above, Plaintiff has provided evidence raising a triable issue of fact as to whether there was a fraudulent transfer of Cal-Regent assets. Thus, the question here is whether CTS received any assets belonging to Cal-Regent. Defendant argues that CTS only handled Cal-Regent assets in the course of administering claims. Defendant explains that on behalf of Cal-Regent, CTS

evaluated claims made against the policies underwritten by Cal-Regent but did not manage or receive any profits or assets belonging to Cal-Regent. Plaintiff presents evidence to the contrary.

Plaintiff provides evidence that CTS diverted Cal-Regent property from the "claims trust accounts." (Pl.'s Opp'n, 18:24-21:25.) As a licensed claims adjustor, CTS sent invoices to insurers, and money received from the insurers was deposited into the claims trust accounts. Funds in these accounts were used to pay CTS as compensation for claims administration, lawyers hired to defend insurance claims, and claimants. (Id. at 18:24-19:1.) Plaintiff offers evidence that the money in the claims trust accounts was Cal-Regent property because for years, the funds in the account were paid to Cal-Regent. (Id. at Ex. 827, ¶ 29; Ex. 826; Ex. 830, 38:8-39:3, 18:624.) However, Plaintiff demonstrates that in April 2014, during the divorce case and without Ms. Nagby's consent, money from the claims trust accounts was withheld from Cal-Regent, and thus, Cal-Regent's creditors. (See ECF No. 41-4, Ex. 14.) In an instant message conversation, Mr. Nagby complained to Dostalik how Ms. Nagby threatened to disclose in a court filing the existence of the funds in the claims trust accounts that the judge could then order be deposited into a "trust account with cal regent or our name on it that makes it a target for a writ of attachment." (Id. at p. 1 (quoted as appears).) Mr. Nagby went on to comment that this threat was "stupid" because "if you ask me the money shoudl get dicxtrubuted quietly through CTS distrubuted." (Id. (quoted as appears).)

Thus, Plaintiff submits sufficient evidence to raise a genuine issue of material fact as to whether CTS received Cal-Regent assets as the result of a fraudulent transfer. Accordingly, the Court denies Defendant CTS's motion as to Plaintiff's fifth and sixth causes of action.

//
//

15
16-cv-03038-BTM-WVG

## **CONCLUSION**

For the reasons discussed above, the Court **denies** Defendant Dostalik's motion as to cause of action seven and **denies** Defendant CTS's motion for summary judgment as to causes of action five and six. (ECF No. 166.) The Court **grants** Defendant CTS's motion as to cause of action thirteen. (ECF No. 166.)

**IT IS SO ORDERED**.

Dated: April 22, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge