# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODYSSEY REINSURANCE COMPANY, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD KEITH NAGBY, *et al.*,<br><br>Defendants. | Case No.: 3:16-cv-3038-BTM-WVG<br><br>**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND LITIGATION EXPENSES**<br><br>**[ECF Nos. 295]** |

Before the Court is Plaintiff Odyssey Reinsurance Company's ("Plaintiff") motion for attorney's fees. (ECF No. 295.) By way of its instant motion, Plaintiff seeks to quantify the Court's grant of attorney's fees and litigation expenses to Plaintiff as a remedial sanction in the Order (the "Contempt Order") holding Defendant Diane Dostalik (f/k/a Diane Nagby) ("Defendant") in civil contempt for violations of the preliminary injunction entered October 4, 2017 (the "Preliminary Injunction") and the temporary restraining order entered August 8, 2018 (the "TRO"). (*Id.*; *see also* ECF Nos. 69, 172, 287.) In support of its motion, Plaintiff provided an affidavit of its counsel attesting to the reasonableness of the requested

fees and expenses, including the relevant timekeepers' rates, qualifications, experience, and billing practices, as well as copies of the attorney's resumes, the copies of relevant attorney's fees and expenses invoices submitted to Plaintiff for payment, and a narrative summarizing the fees and expenses incurred by Plaintiff in connection with its attempts to discover and remedy Defendant's contemptuous conduct. (ECF No. 295-2.) In total, Plaintiff seeks to recover $212,821.00 in attorney's fees and $23,163.00 in expenses as incurred in discovering and prosecuting Defendant's contemptuous conduct.[1] (ECF Nos. 295, 315.) In her response in opposition, Defendant concedes that "an award of fees is proper" but argues that any such award must be "remedial and reasonable" and that Plaintiff has improperly requested recovery of "unrelated or unnecessary fees and costs" totaling $116,519.30.[2] (ECF No. 314, at 2-3.)

"Civil contempt sanctions . . . are employed for two purposes: to coerce the

---

[1] In its reply in support of its instant motion Plaintiff reduced its initial request for $213,771.00 in attorney's fees and $23,355.00 in expenses by $950.00 and $192.00, respectively. (ECF No. 315, at 10; *see also* ECF No. 295.) The withdrawn fees and expenses consist of $192.00 in expenses for the service of unrelated subpoenas on Defendant's accountant, John Scannell, and bookkeeper, Suzanne Werden (ECF No. 295-2, at 16-17), $290.00 in fees for the review of an unrelated objection to a subpoena served on an expert witness retained by Defendant in her divorce case, Barbara Hopper (*id.* at 34), and $660.00 in fees for drafting an opposition to Knight Insurance Co.'s attempts to intervene in this action (*id.* at 99).

[2] (*See* ECF No. 314, at 2 ("Plaintiff wrongfully seeks recovery of $35,445.50 in fees and $3,235.00 in costs incurred in the ordinary course of litigation and discovery, all of which are unrelated to the contempt proceedings. Furthermore, the transcripts and court files demonstrate attorney time and expenses claimed are unreasonably inflated or unnecessarily incurred by inefficient presentation of evidence, and therefore an additional $61,725.00 in fees and $2,081.80 undesignated expert fees as 'costs' should be disallowed. Last, Plaintiff wrongfully seeks recovery of expert fees in the amount of $14,032.00.").

defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (citations omitted). Because attorney's fees and expenses "frequently must be expended to bring a violation of an order to the court's attention," trial courts have the discretion to award "fees and expenses . . . as a remedial measure."[3] *Perry v. O'Donnell*, 759 F.2d 702, 706 (9th Cir. 1985); *see also id.* at 704 ("[C]ivil contempt need not be willful to justify a discretionary award of fees and expenses as a remedial measure.").

The Ninth Circuit "requires a district court to calculate an award of attorneys' fees by first calculating the 'lodestar.'" *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (citations omitted). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), opinion amended on denial of reh'g, 108 F.3d 981 (9th Cir. 1997) (internal quotations and citations omitted). "[H]ours that are excessive, redundant, or otherwise unnecessary" should be excluded from the initial lodestar calculation.[4] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Hours that are not

---

[3] While Defendant argues that an award of fees and expenses as a remedial civil contempt sanction should not include an award of expert witness fees, the cases cited by Defendant, *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991) and *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006), concerned statutory civil rights attorney's fees shifting provisions that did not explicitly include litigation expenses or expert witness fees as recoverable expenses and are therefore inapposite.

[4] "Because a reasonable attorney's fee would not include compensation for such [excessive, redundant, or otherwise unnecessary] hours, the district court should exclude them using one of two methods. First, the court may conduct an hour-by-hour analysis of the fee request, and exclude those hours for which it would be unreasonable to compensate the prevailing party. Second, when faced with a massive fee application the district court has the authority to make across-the-

3

3:16-cv-3038-BTM-WVG

properly billed to one's client also are not properly billed to one's adversary . . . ." (citations and emphasis omitted)); *but see Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) "[T]he district court should take into account the reality that some amount of duplicative work is inherent in the process of litigating over time." (internal quotations and citations omitted)). The "reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal quotations and citations omitted) ("[T]he relevant community is the forum in which the district court sits." (citations omitted)); *see also id.* at 980 ("[A]ffidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate." (internal quotations, citations, and alterations omitted)). "After making [the lodestar] computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."[5] *Morales,* 96 F.3d at 363-64 (internal footnote and

---

board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal quotations, citations, and alterations omitted). Where the district court uses the "percentage cut" method, it must "set forth a concise but clear explanation of its reasons for choosing a given percentage reduction" if the reduction exceeds 10 percent of the total fees sought. *Id.* (internal quotations and citations omitted).)

[5] "The twelve *Kerr* factors bearing on the reasonableness are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the

citations omitted); *see also Perry*, 759 F.2d at 706 ("Ordinarily, the failure to follow the *Kerr* guidelines constitutes an abuse of discretion." (citations omitted)).

Plaintiff is represented by Kirby & McGuinn, P.C., and its attorneys Dean T. Kirby, Jr. and Kimberley V. Deede, with the assistance of paralegals Constantina "Tina" Wright and Jacquelyn Wilson. (*See* ECF No. 295-2.) Mr. Kirby, who has "practiced law for almost forty years" in the fields of bankruptcy and creditor rights and is "certified as a specialist in the field of creditor rights by the American Board of Certification," seeks an hourly rate of $440. (*Id.* at 3, 135-36.) Ms. Deede, who has practiced law in California since 2011 and appears to have focused on bankruptcy and creditor rights since joining Kirby & McGuinn in 2014, seeks an hourly rate of $350. (*Id.* at 3, 137-38.) Ms. Wright and Ms. Wilson, each of whom claim hourly rates of $125, have seventeen and ten years of experience as certified paralegals, respectively. (*Id.* at 3.) Notably, Defendant has not challenged the hourly rates claimed by Plaintiff's counsel and has failed to introduce any evidence in support of her opposition, let alone any evidence that demonstrates the aforementioned hourly rates claimed are unreasonable in San Diego, California for similar work performed by attorneys of comparable skill, experience, and reputation. *See Camacho*, 523 F.3d at 980 ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the

---

case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Morales*, 96 F.3d at 363 n.8 (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992)). "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." *Id.* at 364 n.9 (internal quotations, citations, and alterations omitted)).

district court challenging the accuracy and reasonableness of the facts asserted by the prevailing party in its submitted affidavits." (internal quotations, citations, and alterations omitted)).

Based upon a review of the evidence submitted by the parties, the Court's familiarity with the rates charged in the San Diego legal community, and recent prior attorney's fees awards in this district, the Court concludes that the hourly rates claimed by Plaintiff's counsel (and paralegals) are in line with the customary rates prevailing in the San Diego legal community for similar work performed by attorneys (and paralegals) of comparable skill, experience, and reputation.[6] *See, e.g., Lewis v. Cty. of San Diego*, 2017 WL 6326972, at *13 (S.D. Cal. Dec. 11, 2017) ("In this District, $90 to $210 per hour is generally reasonable for paralegal work . . . ."); *Chamberlin v. Charat*, 2017 WL 3783773, at *2 (S.D. Cal. Aug. 31, 2017) (hourly rates ranging between $250 and $500 for work performed by associates and partners reasonable in debt-collection action); *Nuvasive, Inc. v. Madsen Med., Inc.,* 2016 WL 5118325, at *4 (S.D. Cal. 2016) ($500 hourly rate for attorney with over ten years' experience reasonable in breach of contract action); *Nguyen v. HOVG, LLC*, 2015 WL 5476254, at *3 (S.D. Cal. 2015) ($450, $350, and $125 were reasonable hourly rates for FDCPA-related litigation by senior

---

[6] While not relied upon in reaching its conclusion as to the reasonableness of the hourly rates claimed in this matter, the Court notes that the rates claimed by Plaintiff's counsel are in line with those surveyed in San Diego in the United States Consumer Law Attorney Fee Survey Report 2017–2018, by Ronald L. Burdge (the "USCLAFS Report"), available at https://www.nclc.org/images/pdf/litigation/tools/report-atty-fee-survey.pdf. (*See* USCLAFS Report, at 253 ("California, San Diego . . . Average Paralegal Rate for All Paralegals [$]147[;] Average Attorney Rate for All Attorneys [$]452[;] 25% Median Attorney Rate for All Attorneys [$]331[;] Median Attorney Rate for All Attorneys [$]475[;] 75% Median Attorney Rate for All Attorneys [$]544[;] 95% Median Attorney Rate for All Attorneys [$]700[;] . . . [Median Rate for] Attorneys Handling Credit Rights Cases [$]400[.]; . . . [Median Rate for] Attorneys Handling Other Cases [$]400.").)

partner, senior associate, and paralegal, respectively).

Having reviewed the hours billed by Plaintiff's counsel for which recovery is presently sought (ECF No. 295-2, at 12-125), the Court finds that some of the work completed was excessive, redundant, or otherwise unnecessary to discovering and litigating Defendant's contemptuous conduct. The Court therefore excludes from its award of attorney's fees the following hours billed:

| Date | Description | Time Keeper | Time Billed | Rate | Amount Billed |
|---|---|---|---|---|---|
| 11/23/18 | Communicate (other outside counsel) Analysis/Strategy Respond to Inquiry from Counsel for Knight | DTK | 0.20 | $440/hr | $88 |
| 11/07/18 | Appear for/attend Attend Hearings on Order to Show Causes and Ex Partes | KVD | 2.60 hr | $350/hr | $910 |
| 11/28/18 | Appear for/attend Trial and Hearing Attendance Attend Evidentiary Hearing | KVD | 2.00 hr | $350/hr | $700 |
| 12/19/18 | Appear for/attend Attend Evidentiary Hearing. Remaining Portion | KVD | 8.00 hr | $350/hr | $2,800[7] |

---

[7] No hearing was held in this matter on December 19, 2018. Rather, a contempt-related evidentiary hearing was held on December 20, 2019, for which Mr. Kirby billed eight hours at an hourly rate of $440. (*See* ECF No. 295-2, at 91.) Even assuming the December 19, 2018 entry was a scrivener's error, Mr. Kirby attests that his "firm does not charge for multiple timekeepers when more than one attorney attends a hearing, client conference, or interoffice." (*Id.* at 3.) Since counsel would not charge their own client for such fees, they are inappropriate to levy against Defendant. *See Hensley*, 461 U.S. at 434.

7

| Date | Description | Time Keeper | Time Billed | Rate | Amount Billed |
|---|---|---|---|---|---|
| 01/14/19 | Plan and prepare for Expert Witness Review Goshong [sic] CV and Prepare Supplemental Witness List | KVD | 0.10 | $350/hr | $35 |
| 01/21/19 | Research Research Case Law and Treatise on Cryptocurrency Expert Admission | KVD | 2.00 | $350/hr | $700 |
| 01/27/19 | Draft/Revise Expert Witnesses Edit and Revise Cryptocurrency Expert Outline | KVD | 1.00 | $350/hr | $350 |
| 01/28/19 | Plan and prepare for Review Documents for Preparation as a Witness in Contempt Motion Hearing | TW | 2.00 | $125/hr | $250 |
| 01/29/19 | Appear for/attend First Day Contempt Hearing | DTK | 1.50 | $440/hr | $660[8] |
| 01/29/19 | Appear for/attend Appear for Hearing on Contempt Motion | TW | 4.50 | $125/hr | $562.50 |
| 01/30/19 | Draft/Revise Continue Opposition to Knight Motion to Intervene – Additional Legal Research on Jurisdiction Issue | DTK | 3.00 | $440/hr | $1,320 |

---

[8] The contempt hearing held on January 29, 2019 was scheduled to begin at 10:30 a.m. and concluded at 4:10 p.m. (*See* ECF Nos. 205, 229.) Nevertheless, Mr. Kirby billed eight hours for his attendance at the January 29 hearing. (*See* ECF No. 295-2, at 99; *see also* ECF No. 315, at 6 ("The entry does not specifically refer to preparation on the day of the hearing or to travel to and and [sic] from the Court.").) The Court has reduced this billing by one-and-a-half hours to account for this unexplained discrepancy while allowing for reasonable travel time to and from the courthouse.

| Date | Description | Time Keeper | Time Billed | Rate | Amount Billed |
|---|---|---|---|---|---|
| 01/30/19 | Appear for/attend Appear for Continued Hearing on Contempt Motion | TW | 3.00 | $125/hr | $375 |
| 04/01/19 | Review/Analyze Review Chris Groshong Outline and Revise | KVD | 1.00 | $350/hr | $350 |
| 05/14/19 | Plan and prepare for Expert Outline Review and Prep. Meet with Chris Groshong for Final Review | KVD | 1.70 | $350/hr | $595 |
| 05/15/19 | Review/analyze Review Objection to Use of Expert. Prepare Oral Argument in Response. | KVD | 2.00 | $350/hr | $700 |
| 05/19/19 | Plan and prepare for Draft Direct of Tina Wright for Chain of Custody Testimony as to Citibank Records | KVD | 0.30 | $350/hr | $105 |
| 05/20/19 | Appear for/attend Attend Continued Contempt Hearing | KVD | 6.00 | $350/hr | $2,100 |
| 05/20/19 | Appear for/attend Trial and Hearing Attendance – Attend Hearing on Order to Show Cause re: Diane Nagby | TW | 2.00 | $125/hr | $250 |
| 05/21/19 | Appear for/attend Trial and Hearing Attendance – Attend hearing on Order to Show Cause re: Diane Nagby | TW | 4.00 | $125/hr | $500 |
| 05/22/19 | Communicate (other external) Phone Call with Groshong | KVD | 0.50 | $350/hr | $175 |
| | **Total Fees Reduction:** | | | | **$13,525.50** |

The aforementioned excluded hours include work spent on matters that were irrelevant to the contempt proceedings, including work related to a third-party's attempts to intervene in this action. They also include redundant billing for appearances at hearings, which Mr. Kirby attested are not appropriately billed to Plaintiff under counsel's billing policies. (*See* ECF No. 295-2, at 3.) They also include hours related to preparing the testimony of Mr. Chris Groshong, who was retained by Plaintiff to serve as an expert in the area of cryptocurrency but was not admitted as an expert in this matter. While the Court considers the time spent by counsel consulting with Mr. Groshong regarding the nature of cryptocurrency and its relation to Defendant's contemptuous conduct to be reasonable, his testimony was held by the Court not to be admissible and the Court finds counsel's hours spent preparing for such testimony therefore not compensable. Except as set forth above, the Court finds the other attorney's fees hours requested to be reasonable. (*See* ECF No. 295-2, at 12-125.) Indeed, contrary to Defendant's arguments, all such remaining hours were related to investigating, exposing, halting, or minimizing the damage of Defendant's contempt rather than "ordinary litigation and discovery expenses," as they were necessitated by Defendant's (and/or her agents) attempts to transfer, conceal, dissipate, or squander assets and failure to provide documents for Plaintiff's review in violation of the Preliminary Injunction and TRO, rather than the prosecution of Plaintiff's underlying claims under California's Uniform Fraudulent Transfer Act (the "UFTA").[9] And while Defendant

---

[9] Plaintiff initiated this action "seeking recovery of funds to which it claims an interest as creditor, funds allegedly fraudulently transferred from Pacific Broker's Insurance Services ('PBIS') to Defendant . . . and her former husband." (ECF No. 329-1, at 5 (citations omitted); *see also id.* at 6 ("The complaint alleges $2,500,000 was fraudulently transferred from PBIS to [Defendant]." (citations omitted)); *see generally*, ECF No. 24 (Plaintiff's operative second amended complaint).) On October 4, 2017, the Court entered the Preliminary Injunction that, *inter alia*, prohibited Defendant from transferring or commingling "any funds or property

objects to the number of hours expended by Plaintiff's counsel in drafting relevant filings and preparing for relevant hearings, Defendant has provided no evidence in support of her objections and the Court concludes that the hours spent on such matters were not excessive in light of the convoluted nature of Defendant's contemptuous conduct and her vehement defense thereof. Moreover, after considering the *Kerr* factors, the Court concludes that no upward or downward adjustment to the lodestar amount is warranted and that such amount constitutes reasonable fees in this matter.

Further, having reviewed the litigation expenses billed by Plaintiff's counsel

---

received in connection with the sale of PBIS to AmTrust" and required her to "deposit in the registry of the Court . . . all funds already received in connection with the sale of PBIS to AmTrust" as well as any funds subsequently received by Defendant from AmTrust or its agents. (ECF No. 69.) On August 8, 2018, the Court entered the TRO that, *inter alia*, prohibited Defendant from transferring funds from any accounts associated with Caye International Bank or Rich Uncles, LLC or any investment in real estate or cryptocurrency. (ECF No. 172.) The TRO further compelled Defendant to provide Plaintiff's counsel with copes of documents relating to Caye International Bank, Rich Uncles, LLC, and her investments in real estate and cryptocurrency. (*Id.*) After a multiple-day evidentiary hearing, the Court issued the Contempt Order on June 27, 2019, in which it held Defendant in contempt of the Preliminary Injunction for: (i) failing to deposit into the Court's registry at least $176,263.13 in PBIS sales proceeds in her possession in October 2017; (ii) commingling and transferring PBIS sales proceeds between October 2017 and September 2018; and (iii) failing to deposit into the Court's registry at least $551,750 in PBIS sales proceeds in her possession in July 2019. (ECF No. 287, at 26.) Further, Defendant was held in contempt of the TRO for: (i) transferring and disbursing funds held by Caye International Bank and Rich Uncles, LLC in August and September 2018; and (ii) failing to provide Plaintiff's counsel with documents as required by the TRO. (*Id.*) A thorough explanation of Defendant's contemptuous conduct and the further investigation and litigation necessitated thereby is provided in the Contempt Order, which serves as a helpful companion in the Court's review of counsel for Plaintiff's billing invoices and narrative summary. (*See generally*, ECF No. 287; *see also* ECF No. 295-2.)

for which recovery is presently sought (ECF No. 295-2, at 12-134), the Court finds that some of the expenses sought were excessive or unnecessary to discovering and litigating Defendant's contempt. The Court therefore excludes from its award of litigation expenses the following expenses billed:

| Date | Description | Amount Billed |
|---|---|---|
| 01/22/19 | Experts Retainer for Expert Witness | $2,000 |
| 04/16/19 | Expert Witness Fees | $1,212.50[10] |
| 07/08/19 | Experts Expert testimony regardin[g] cryptocurrency | $1,000 |
| | **Total Expenses Reduction:** | **$4,212.50** |

All of the disallowed expenses relate to Mr. Groshong's service as an expert witness on behalf of Plaintiff. (*See* ECF No. 295-2, at 2 ("Expenses total $23,355.00 and include the fees of experts Brian Bergmark and Chris Groshong . . . . The expenses requested in the Motion are reflected in the invoices themselves with only one exception. The fees of expert witness Brian Bergmark, are billed to Kirby & McGuinn and were paid directly by [Plaintiff].").) Because Mr. Groshong was not admitted as an expert in this matter, the Court declines to award Plaintiff the expenses associated therewith. Nevertheless, as previously stated, the Court considers the consultations between Plaintiff's counsel and Mr. Groshong regarding the nature of cryptocurrency and its relation to Defendant's contemptuous conduct to be reasonably necessary and a review of counsel's billing records reflects four (4) hours spent by Mr. Groshong on such consultations. (*See id.* at 98, 105.) Further, while Plaintiff has failed to provide Mr. Groshong's

---

[10] Plaintiff requested reimbursement in the amount of $1,812.50 in connection with this entry. The Court has reduced such amount by $1,212.50 to reflect its award of $600.00 in expenses related to Mr. Groshong's services as Plaintiff's cryptocurrency consultant in this matter.

hourly rate for his services as a cryptocurrency consultant, the Court concludes that a reasonable hourly rate for such services in the San Diego area would be $150.00 per hour.[11] Accordingly, the Court will award Plaintiff $600.00 in expenses (*i.e.*, four (4) hours at an hourly rate of $150.00) in connection with Mr. Groshong's consulting services. The Court finds the other expenses requested to be reasonable. (*See* ECF No. 295-2, at 12-134.) Further, while Defendant argues that "the claimed expert fees would have been incurred even in the absence of the contempt proceedings" because "Plaintiff would still be required to prove the tracing of funds by expert examination and testimony" (ECF No. 314, at 8), the Court disagrees that such a showing would have been necessary, at least to the extent necessitated by Defendant's contemptuous conduct, to Plaintiff's successful prosecution of its underlying claims. (*See, e.g.*, ECF No. 289 (granting summary judgment to Plaintiff against Defendant on its claims under the UFTA).)

///
///
///
///
///
///
///
///

---

[11] The Court considers Mr. Groshong's services as a cryptocurrency consultant in this case to be comparable to those of an accountant. Notably, the Criminal Justice Act Policies and Procedures for the Ninth Circuit provide that hourly rates between $150 and $275 are presumptively reasonable for accountants. *See* Judicial Council of the Ninth Circuit, Criminal Justice Act Policies and Procedures, Appendix 2, revised July 11, 2018, available at: https://www.ca9.uscourts.gov/cja/Circuit%20CJA%20Policies.pdf

Based upon the foregoing and due consideration, Plaintiff's motion for attorney's fees and litigation expenses (ECF No. 295) is **GRANTED IN PART, DENIED IN PART.** As a remedial sanction for Defendant's contemptuous conduct as set forth in the Contempt Order (ECF No. 287), the Court awards Plaintiff Odyssey Reinsurance Company its attorney's fees in the amount of $199,295.50 and its expenses in the amount of $18,950.50, for a total of $218,246.00. The Clerk shall enter judgment accordingly against Defendant Diane Dostalik (f/k/a Diane Nagby) in the above amounts.

**IT IS SO ORDERED.**

Dated: December 27, 2019

Honorable Barry Ted Moskowitz
United States District Judge