1

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11                                          Case No.: 3:16-cv-3038-BTM-WVG

ODYSSEY REINSURANCE
12
COMPANY, a Connecticut                      **ORDER DENYING MOTION TO**
13  corporation,                            **VACATE ARREST WARRANT**

14                              Plaintiff,

15  v.

16  RICHARD KEITH NAGBY, *et al.*,           **[ECF No. 329]**

17                           Defendants.

18

19        Before the Court is Defendant Diane Dostalik's (f/k/a Diane Nagby)

20  ("Defendant") motion to vacate the arrest warrant for failure to purge her civil

21  contempt issued by this Court on July 15, 2019 (ECF No. 300) (the "Arrest

22  Warrant"). (ECF No. 329.) Plaintiff initiated this action "seeking recovery of funds

23  to which it claims an interest as a creditor, funds allegedly fraudulently transferred

24  from Pacific Broker's Insurance Services ('PBIS') to Defendant . . . and her former

25  husband." (ECF No. 329-1, at 5 (citations omitted); *see also id.* at 6 ("The

26  complaint alleges $2,500,000 was fraudulently transferred from PBIS to

27  [Defendant]." (citations omitted)); *see generally*, ECF No. 24 (Plaintiff's operative

28  second amended complaint).) On October 4, 2017, the Court entered a

1

preliminary injunction (the "Preliminary Injunction") that, *inter alia*, prohibited Defendant from "[t]ransferring, assigning, disposing, of or commingling any funds or property received in connection with the sale of PBIS to AmTrust" and required her to "deposit in the registry of the Court . . . all funds already received in connection with the sale of PBIS to AmTrust" as well as any funds subsequently received by Defendant from AmTrust or its agents. (ECF No. 69, at 2-3.) On August 8, 2018, the Court entered a temporary restraining order (the "TRO") that, *inter alia*, prohibited Defendant from disbursing or transferring any funds from any account established at Caye International Bank or proceeds from any investment related to Rich Uncles, LLC or cryptocurrency. (See ECF No. 172, at 2.) The TRO further required that Defendant provide Plaintiff's counsel with documents and information relating to her interactions with Caye International Bank, Rich Uncles, LLC, and cryptocurrency within thirty (30) days of the entry of the TRO. (*Id.* at 3.) When Defendant failed to timely oppose Plaintiff's October 5, 2018 *ex parte* application for an order to show cause why Defendant should not be held in contempt for, *inter alia*, violations of the Preliminary Injunction and TRO (ECF Nos. 182, 185), the Court set an evidentiary hearing and ordered Defendant to show cause why she should not be held in contempt. (ECF No. 199.)

After a multiple-day evidentiary hearing, the Court issued an Order filed June 27, 2019 (the "Contempt Order") in which it held Defendant in contempt for violating the Preliminary Injunction by: (i) failing to deposit into the Court's registry $176,263.13 in PBIS sales proceeds in her possession on October 11, 2017; (ii) commingling and transferring PBIS sales proceeds between October 2017 and September 2018; and (iii) failing to deposit into the Court's registry $551,750 in PBIS sales proceeds in her possession on July 25, 2019. (ECF No. 287, at 8-28.) The Court also held Defendant in contempt for violating the TRO by: (i) transferring and disbursing funds from Caye International Bank and proceeds from Rich Uncles, LLC in August and September 2018; and (ii) failing to provide documents

3:16-cv-3038-BTM-WVG

and information related to Caye International Bank, Rich Uncles, LLC, and cryptocurrency accounts and investments. (*Id.*) Further, the Court granted Plaintiff the attorney's fees it incurred in connection with Defendant's contemptuous conduct and held that to purge her contempt, Defendant must deposit the sums of $136,333.17 and $551,750 into the Court's registry and provide Plaintiff with "any documents or substantive information, documented or undocumented, regarding the disposition of and access to any income, accounts, investments, or proceeds relating to Caye International Bank, Rich Uncles, LLC, and cryptocurrency." (*Id.* at 27-28.) The Court gave Defendant "fourteen days from the entry of th[e] Order to purge the contempt, or she [would] be committed to the custody of the U.S. Marshal" and further ordered the parties to "appear before the Court on July 15, 2019 at 3 pm for a status conference as to any purging of the contempt." (*Id.* at 27-28, 30.) The Court stated that, "[i]n the absence of purging of the contempt, [Defendant] shall then and there surrender to the U.S. Marshal to be confined until she purges her contempt." (*Id.* at 30.) On July 15, 2019, Defendant failed to appear and the Arrest Warrant was issued as a coercive civil contempt sanction for Defendant's failure to timely purge her contempt or appear before the Court at the status conference. (*See* ECF Nos. 300, 305.)

After the entry of the Contempt Order but before the issuance of the Arrest Warrant, the Court granted summary judgment against Defendant on July 2, 2019 as to Plaintiff's fourth cause of action, namely constructive fraud in violation of California's Uniform Fraudulent Transfer Act (the "UFTA"), in the amount of $2,500,000. (ECF No. 289 (the "Summary Judgment Order").) On August 30, 2019, the Court entered final judgment in favor of Plaintiff against Defendant pursuant to Plaintiff's acceptance of an offer of judgment made by Defendant under Federal Rule of Civil Procedure 68 on or about August 5, 2019. (ECF No. 325 (the "Judgment"); *see also* ECF No. 316 (notice of acceptance of offer of judgment); ECF No. 319 (proposed judgment on acceptance of offer of judgment).) The

3:16-cv-3038-BTM-WVG

Judgment provides, *inter alia*, that:

> 1.     The payment of $2,500,000.00 from [PBIS] to [Defendant] (the "Avoided Distribution") is avoided under the [UFTA].

> 2.     Plaintiff . . . shall recover from Defendant . . . damages under the [UFTA] in the total amount of $3,208,150.68 (consisting of the total of $2,500,00.00 plus $708,150.68 in pre-judgment interest at the rate of seven percent per cent per annum (7%) calculated from August 4, 2015).

> 3.     Consistent with the [Preliminary Injunction] ([ECF] No. 69) and [the Contempt Order] ([ECF] No. 287) . . . :

>> 3.1     [Defendant], individually and in any other capacity, her agents, trusts, assigns, and all those acting [on] her behalf, including Green Tree Funding, LLC, are permanently enjoined and restrained from directly or indirectly transferring, assigning, disposing of or commingling any of the Avoided Distribution, or funds or property representing the proceeds of the Avoided Distribution; . . .

>> 3.3     [Defendant] shall deposit into the registry of this Court all funds representing the proceeds of the Avoided Distribution, where they shall be held pending a determination by the Court as to what extent, if any, they should be applied to satisfaction of this Judgment.

(ECF No. 325, at 2-3.)  Notably, unlike the provision requiring Defendant to deposit proceeds from the avoided distribution into the Court's registry, the Judgment does not include a provision requiring compliance with the Contempt Order's requirements that Defendant provide Plaintiff with "any documents or substantive information, documented or undocumented, regarding the disposition of and access to any income, accounts, investments, or proceeds relating to Caye International Bank, Rich Uncles, LLC, and cryptocurrency."  (*Compare* ECF No. 287; *with* ECF No. 325.)

To date, Defendant has evaded arrest and her present whereabouts and contact information are unknown even to her own counsel.  (*See* ECF No. 334-2,

3:16-cv-3038-BTM-WVG

¶ 8 ("Despite multiple efforts, including phone calls and emails – which were the primary means by which I [*i.e.,* Defendant's counsel] communicated with [Defendant] – I have received no communications from [Defendant] since July 14, 2019. I do not know her current whereabouts, nor have I received any information which would facilitate communication with her or lead me to her whereabouts.").) Further, Defendant has failed to deposit into the Court's registry any and all PBIS sales proceeds (*i.e.,* the Avoided Distribution) as required by the Preliminary Injunction, Contempt Order, and Judgment.

Nevertheless, Defendant seeks the vacatur of the Arrest Warrant.[1] (ECF No. 329.) According to Defendant, the Preliminary Injunction and Contempt Order "all relate to or are derived from . . . Plaintiff's claim [that Defendant] fraudulently received $2,500,000 from PBIS." (ECF No. 329-1, at 14.) Further, "[b]ecause the Court entered judgment as to the fraudulent transfer of $2,500,000, the underlying contempt proceeding, temporary restraining orders, preliminary injunctions, orders

---

[1] Defendant does not argue that any remedial or compensatory civil contempt sanctions issued in connection with the Preliminary Injunction or Contempt Order, including Plaintiff's attorney's fee award entered against her in connection with the Contempt Order, should be vacated, nor does the Court feel compelled to do so. *See Reliance Ins. Co. v. Mast Const. Co.,* 84 F.3d 372, 376 (10th Cir. 1996) ("Generally speaking, a person who violates an injunction or temporary restraining order during its pendency is subject to a compensatory civil contempt judgment, even if the injunction or restraining order later terminates due to passage of time or mootness."); *Klett v. Pim,* 965 F.2d 587, 590 (8th Cir. 1992) ("If the underlying injunction abates for a reason that does not go to the jurisdiction of the issuing court, . . . a compensatory civil contempt may still be brought.") Indeed, the Judgment itself implicitly recognizes the continuing validity of the Contempt Order's grant of Plaintiff's attorney's fees. (*See* ECF No. 325, ¶ 4 ("Except as otherwise ordered by the Court on [Plaintiff's] motion for attorney fees filed July 11, 2019, each party shall bear their own attorney fees.").) Notably, Plaintiff's motion for attorney's fees seeks to quantify its fee award under the Contempt Order. (*See* ECF No. 295; *see also* ECF No. 287, at 28 (granting Plaintiff fourteen days to file a motion for attorney's fees).)

to show cause, contempt order, and sanctions order related to the fraudulently transferred funds are all now expired." (*Id.* at 15.) Thus, Defendant argues, "the Contempt Order upon which the [A]rrest [W]arrant was issued is no longer valid" and the Arrest Warrant should be vacated. (*Id.*) As support for her conclusions, Defendant argues that "[a]lthough a preliminary injunction is usually not subject to a fixed time limitation, it is *ipso facto* dissolved by a dismissal of the complaint or by entry of a final decree in the case." (ECF No. 329-1, at 11 (quotations, alterations, and emphasis omitted) (citing *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093-94 (9th Cir. 2010); and *Fundicao Tupy S.A. v. United States*, 841 F.2d 1101, 1103 (Fed. Cir. 1988)). Defendant further argues "the [C]ourt cannot enforce a 'coercive' civil contempt if the underlying injunction is no longer in effect for whatever reason." (ECF No. 329-1, at 13 (citing *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 630 (9th Cir. 2016); *Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 675 (9th Cir. 1981); and *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)); *see also id.* at 14 ("[T]he term of punishment for civil contempt cannot extend beyond the trial proceedings since at the termination of the trial the contemnor's actions can no longer be purged." (emphasis omitted) (quoting *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980)).)

As an initial matter, Plaintiff argues that Defendant should be "barred" from seeking the vacatur of the Arrest Warrant "until she surrenders and is taken into custody" because she is presently a "fugitive from justice disentitle[d] . . . to call upon the resources of the Court." (See ECF No. 332, at 10-11.) Yet each and every case cited by Plaintiff in support of such argument, known as the "disentitlement doctrine," was based upon an individual that was a fugitive from *criminal* prosecution. *See Molinaro v. New Jersey*, 396 U.S. 365 (1970) (declining to adjudicate appeal from state court criminal conviction by defendant who had failed to surrender to state authorities after revocation of bail); *United States v. $129,374 in U.S. Currency*, 769 F.2d 583, 584 (9th Cir. 1985) (affirming denial of

motion to intervene in a civil forfeiture proceeding by the successor in interest to a defendant that failed to appear for sentencing in criminal prosecution that was the genesis of the civil forfeiture proceeding); *United States v. One Parcel of Real Prop., Described as Lot 156 & S. Three Feet of Lot 157, Valley View Estates, a Subdivision, in City of Grandview, Jackson Cty., Mo.*, 982 F.2d 526 (8th Cir. 1992) (affirming dismissal of claims of ownership in civil in rem forfeiture proceeding where claimant was the subject of an outstanding arrest warrant for criminal prosecution that was the genesis of the forfeiture proceeding). The parties have not cited, nor has the Court been able to find, precedent prohibiting a civil contempt fugitive from seeking the vacatur of a sanction imposed as a result of such civil contempt. Because the disentitlement doctrine is not jurisdictional in nature and Defendant's arguments fail on their merits, the Court need not reach the issue. See *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1054 (9th Cir. 1991) ("The disentitlement doctrine . . . is not one of jurisdictional dimensions, but rather one based on equitable considerations." (citing *United States v. Sharpe*, 470 U.S. 675, 681 n.2 (1985); and *Molinaro*, 396 U.S. at 366)); *see also $129,374 in U.S. Currency*, 769 F.2d at 587 ("[A]n individual who [is] flouting legal process has no entitlement to engage the court's resources to adjudicate his claims *in an action related to his prior criminal conviction.*" (emphasis added) (citing *Conforte v. Comm'r*, 692 F.2d 587, 589 (9th Cir. 1982)).

Because relevant portions of the Preliminary Injunction of which Defendant was found to be in contempt have been merged with and renewed via their incorporation into the Judgment, Defendant's arguments as to the termination of the civil contempt sanctions are inapposite. (*See* ECF No. 69, at 2-3; ECF No. 287, at 26; ECF No. 325, at 2-3; *see also*; ECF No. 329-1, at 9 ("[Defendant] agreed to judgment as to the fraudulent transfer, interest since the fraudulent transfer, . . . and a permanent injunction requiring turnover of funds derived from her receipt of PBIS funds.").) Defendant's argument that "the Court cannot find the

[Preliminary Injunction] part and parcel of" the Judgment (ECF No. 329-1, at 11), is belied by the explicit terms of the Judgment to which she agreed.[2] (*See* ECF No. 325, at 2 ("*Consistent with* the [Preliminary Injunction] ([ECF] No. 69) and [the Contempt Order] ([ECF] No. 287) . . . ." (emphasis added)).) Defendant has put forth no precedent for the proposition that a coercive civil sanction that results from a party's contempt of a preliminary injunction automatically dissolves or otherwise extinguishes upon the entry of final judgment where the material terms of such preliminary injunction are incorporated into a permanent injunction that is part of the relevant final judgment. Thus, while the Court agrees that the requirements of the Contempt Order that were not incorporated into the Judgment, namely the requirement that Defendant provide Plaintiff with documents and information "income, accounts, investments, or proceeds relating to Caye International Bank, Rich Uncles, LLC, and cryptocurrency," dissolved upon the entry of the Judgment,[3] the Court disagrees that the requirements of the Contempt Order that *were* incorporated into the Judgment, namely the requirement that Defendant deposit the proceeds of the avoided transfers into the Court's registry, similarly dissolved. (*See* ECF No. 287, at 27-28; ECF No. 325.)

The cases relied upon by Defendant as the crux of her arguments are all

---

[2] Because Defendant drafted and approved the form and substance of the Judgment via the offer of judgment procedures of Federal Rule of Civil Procedure 68, any argument that she did not have notice of or an opportunity to be heard as to the merger and renewal of the relevant terms of the Preliminary Injunction into the Judgment's permanent injunction are meritless. (*Compare* ECF No. 316, at 3-5 (Defendant's offer of judgment); *with* ECF No. 325 (the Judgment).)

[3] Plaintiff may still seek such documents and information, however, via post-judgment discovery as set forth in Federal Rule of Civil Procedure 69. *See* Fed. R. Civ. P. 69(a)(2) ("In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.").

3:16-cv-3038-BTM-WVG

distinguishable. *See Shell Offshore*, 815 F.3d at 630-31 (coercive contempt sanction was mooted where "preliminary injunction ha[d] expired and w[ould] not be renewed" in final judgment); *U.S. Philips*, 590 F.3d 1091, 1092-95 (court's order modifying preliminary injunction was *void ab initio* where it was entered after grant of default judgment that "did not . . . incorporate the terms of the TRO or preliminary injunction . . . [and] did not impose an ongoing asset freeze" on the defendants); *Scott & Fetzler Co.*, 643 F.2d at 674-75 (contempt judgment vacated where underlying injunction was invalidated due to trial court's abuse of discretion in original grant of injunction); *Powers*, 629 F.2d at 622-29 (9th Cir. 1980) (finding of contempt for witness's refusal to testify in criminal trial and resulting criminal contempt sanction of 90 days imprisonment upheld on appeal); *Klett*, 965 F.2d at 590 (district court lacked subject matter jurisdiction over contempt claims because it did not issue the underlying injunction); *Fundicao Tupy*, 841 F.2d at 1102-03 (interlocutory appeal of denial of preliminary injunction mooted where underlying court's intervening final decision dismissed appellant's complaint without grant of permanent injunction). Moreover, Defendant ignores the Court's power to hold a disobedient party in contempt for its failure to perform any specific act required by a judgment. *See* Fed. R. Civ. P. 70(e); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." (citations omitted)); *see also United States v. Swift & Co.*, 286 U.S. 106, 115 (1932) ("We reject the argument . . . that a decree entered upon consent is to be treated as a contract and not as a judicial act."). Finally, Defendant has made no showing that she has purged her contempt as required by the surviving provisions of the Contempt Order or that the necessity for the coercive sanction of imprisonment has otherwise ended. Nor has she demonstrated a defect in the underlying injunction or contempt proceedings or an inability to comply with the surviving provisions of the Contempt Order incorporated into the Judgment.

Based upon the foregoing, Defendant's motion to vacate the Arrest Warrant (ECF No. 329) is **DENIED**.  The Court reminds Defendant that she "carries the keys of [her] prison in [her] own pocket" and "can end the sentence and discharge h[er]self at any moment by doing what [s]he ha[s] previously refused to do." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911) (quotations omitted).

Finally, the Court observes that, despite six months having elapsed since the entry of the Contempt Order, Defendant has failed to purge her contempt of the surviving provisions of the Contempt Order incorporated into the Judgment. Further, given the nature of her prior contemptuous conduct, there is a significant likelihood that Defendant has dissipated the proceeds of the avoided transaction (and continues to do so) that she has been ordered to pay into this Court's registry. Moreover, Defendant continues to disregard this Court's requirement that she turn herself over to the United States Marshals Service until such time as she purges her contempt.  Accordingly, the Court will refer this matter to the United States Attorney's Office for the Southern District of California to determine in its discretion whether Defendant should be prosecuted for criminal contempt.  *See* Fed. R. Crim. P. 42; 18 U.S.C. §§ 402, 3691.  The Clerk is directed to serve a copy of this order, as well as the Preliminary Injunction, Contempt Order, and Judgement (ECF Nos. 69, 287, 325), upon the Chief of the Criminal Division of the United States Attorney's Office.

**IT IS SO ORDERED.**

Dated: December 30, 2019

Honorable Barry Ted Moskowitz
United States District Judge